**JOSHUA MEIER COMPANY, Inc.,**
**Plaintiff-Appellant,**

v.

**ALBANY NOVELTY MANUFACTUR-**
**ING CO., Defendant-Appellee.**

**No. 335, Docket 23866.**

United States Court of Appeals
Second Circuit.

Argued April 10, 1956.

Decided July 30, 1956.

Samuel J. Stoll, Jamaica, N. Y., for plaintiff-appellant.

Morton Amster, New York City (Simon Queen, Boston, Mass., of counsel on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

**LUMBARD, Circuit Judge.**

The plaintiff and defendant in this action are both engaged in the manufacture and sale of display and photograph albums, transparent sheet holders, card and passport cases, book covers and similar items. The plaintiff is a New York corporation; the defendant is a Massachusetts corporation doing business in New York. The plaintiff complains of the defendant's copying of portions of its copyrighted trade catalog and of its use of various registered and unregistered trademarks. Judge Noonan denied plaintiff's motion for a preliminary injunction and from this order plaintiff appeals.

The plaintiff's complaint set out four causes of action. The first alleged infringement of the plaintiff's copyrighted trade catalog. The plaintiff and defendant sell many items which are substantially the same. In 1951, 1952, and 1953 the plaintiff published catalogs numbered 52, 53, and 54 respectively. Each of these catalogs was registered with the Register of Copyrights and contained the statutory copyright notice. The plaintiff's catalogs consisted primarily of descriptions of the various items it offered for sale together with photographs of some of the items, price lists, catalog numbers, and other information of interest to prospective customers. In December 1954 the defendant published its own "Anco Catalog of Visual Displays" similarly describing the items it offered for sale. The plaintiff alleges that much of the material contained in the defendant's catalog, particularly its descriptions of display albums, card cases and other articles of merchandise, was copied from the plaintiff's catalogs.

For its second cause of action the plaintiff alleged the infringement of two registered trademarks. Since 1937 the plaintiff has used as a trademark "V.P.D." the initial letters of the words "Visible Protects Displays." These letters are prominently featured in plaintiff's catalog, in some instances as part of the words they represent, and in other instances merely in the form of "V.P.D."

The trademark "V.P.D." was registered in 1938. In December 1954, the defendant commenced to use the letters "A.V.D." representing "Anco Visual Displays." This mark is prominently featured in the defendant's catalog, but it always appears with the letters arranged vertically and the word "Anco" spelled out horizontally after the initial letter "A." The plaintiff alleges that the defendant's use of "A.V.D." infringes the plaintiff's mark "V.P.D."

The plaintiff has also used since 1950 the name "Spel-Binder" to identify its display albums. "Spel-Binder" was registered as a trademark in 1952. Since December 1954, the defendant has used the name "Speed-Binder" to designate similar articles of merchandise. Plaintiff alleges that "Speed-Binder" infringes "Spel-Binder."

For its third cause of action the plaintiff alleges a false designation of origin in violation of 15 U.S.C.A. § 1125(a). The plaintiff complains under this heading of the defendant's infringement of the two registered trademarks described above and of five unregistered trademarks: "Pigrain" and "Leatherlen" to describe a variety of plastic album covers, "Easel-Aide" to describe supporting brackets for display albums, "Albumettes" to describe pocket-size photograph albums, and "Vis-O-Top" for transparent desk pads. The defendant uses "Pigrain," "Leatherlen," "Easel-Aid," "Album-Ites," and "Vis-O-Top" to describe similar items.

The fourth cause of action alleges that the practices complained of in the first three causes of action also constitute unfair competition under New York law in that these practices are calculated to mislead the purchasing public into the belief that the goods of the defendant are the goods of the plaintiff.

Judge Noonan denied the motion for a preliminary injunction in a brief memorandum in which he found that "There remains at least a doubt as to the plaintiff's ultimate success." In view of this finding he concluded that "since granting the motion would grant the plaintiff a substantial portion of the relief sought, and further since the plaintiff has not established that it would suffer irreparable injury if such relief is not granted at this time, a balancing of the equities in this matter requires the court to deny this motion."

■ This court's function in reviewing the grant or denial of a preliminary injunction is a limited one. A motion for such relief is directed to the sound discretion of the district judge whose decision will not be reversed unless an abuse of discretion is apparent. American Visuals Corp. v. Holland, 2 Cir., 1955, 219 F.2d 223.

The exhibits and affidavits leave little doubt that the defendant deliberately copied a large part of the plaintiff's catalogs. The similarities are so numerous and substantial as to give rise to a strong inference of copying. In many instances defendant uses exactly the same language in the description of similar items; in other cases the language is the same except for the inversion of certain words or the substitution of one word for another. This crude effort to give the appearance of dissimilarity is itself evidence of copying. It is true that both plaintiff and defendant were describing similar items in simple non-technical words and that substantial similarity in language would not necessarily indicate copying. But the defendant has used in one instance exactly the same stock number to designate one of its products, a lucite "easel-aide." The use of this stock number, "LE–2," is hard to explain on any hypothesis other than copying, especially since neither plaintiff nor defendant designates any of its products "LE–1." The defendant's choice of the number "2" can only be the result of slavish imitation. Moreover, the defendant's affidavits do not even deny copying. Thus Samuel Dantowitz, defendant's president and treasurer says in his affidavit only that he *instructed* the advertising agent to employ original copy, original photos, and original art work in preparing the catalog. Mr. Dunne, the advertising agent, averred in his affidavit only that

he was so instructed and that he "at all times followed the specific instructions from Samuel Dantowitz to prepare a catalog which would be distinctive in style and presentation and which would unquestionably identify the catalog as the catalog of the Albany Novelty Manufacturing Company * * * "

The careful omission from these affidavits of any denial that copying took place strongly suggests that there was copying and provides additional support for the inference which naturally follows from the substantial similarities in the two catalogs.

■ Since the defendant's affidavits contain nothing to challenge the validity of the plaintiff's copyrights, and since in the affidavits before Judge Noonan there is no denial that the defendant copied, the plaintiff was entitled to a preliminary injunction on the first cause of action without a detailed showing of danger of irreparable injury. Cf. Rushton Co. v. Vitale, 2 Cir., 1955, 218 F.2d 434.

■■ In the second cause of action the plaintiff is complaining of the defendant's use of its two registered trademarks "V.P.D." and "Spel-Binder." In order for it ultimately to prevail in this cause of action the plaintiff must show that the defendant's marks "A.V.D." and "Speed-Binder" are so similar to plaintiff's marks that they are likely to cause confusion or deceive purchasers as to the source of origin of its goods. 15 U.S.C. A. § 1114(1). We think that Judge Noonan did not abuse his discretion in deciding that there was sufficient doubt of plaintiff's success in this cause of action to justify refusing to issue a preliminary injunction. We cannot say that the plaintiff is entitled to prevent the use of every three letter series containing the letters "V" and "D," especially when these are the initial letters of "Visual Displays," a generic name for the commodity which both plaintiff and defendant sell. Moreover, the defendant always uses the letters "A.V.D." in conjunction with the name Anco. This too serves to distinguish the defendant's mark from the plaintiff's.

■ Nor does it appear that "Speed-Binder" is likely to be confused with "Spel-Binder." The word "Binder" is a descriptive term of which the plaintiff is entitled to no monopoly. Although "Speed" has several letters in common with "Spel," the ideas conjured up by the two words are quite different and we think confusion is unlikely. In the absence of any showing of special irreparable damage likely to befall the plaintiff or any other circumstances making preliminary injunctive relief especially appropriate, Judge Noonan did not abuse his discretion in denying a preliminary injunction with respect to this cause of action.

■ In its third cause of action the plaintiff complains of the defendant's use of the marks "Pigrain," "Leatherlen," "Easel-Aid," "Album-Ites," and "Vis-O-Top." The theory of this cause of action is that the defendant's use of these expressions constitutes a false designation of origin and a false description and representation in violation of 15 U.S. C.A. § 1125(a). This can only be so if the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source. 15 U.S.C.A. § 1125(a) requires at least that the defendant be guilty of a false representation. If the expressions used here by the defendant are not uniquely associated with the plaintiff's goods there is no such false representation.

■ The plaintiff alleges in its verified complaint that the marks in question "have been used by the plaintiff for many years in connection with the sale and advertising of the goods mentioned in paragraph 5 of this complaint and said trademarks are owned by the plaintiff in connection with said goods." It may well be that if the plaintiff has acquired a common law trademark, the defendant's use of that mark constitutes a false designation of origin within the meaning of § 1125(a). But the opposing affidavit of the defendant's president, Samuel Dan-

towitz, raises an issue whether the plaintiff's alleged trademarks were not in fact used widely in the industry to describe similar items of merchandise. Thus the affidavit states:

"That included in [the defendant's] catalog are the descriptive designations *Pigrain, Leatherlen, Easel-Aid, Album-Ites,* and *Vis-O-Top,* which your deponent has come to know as common descriptive terms used in connection with the merchandising of visual displays of leather or leatherette having a pig grain finish or texture including aids for the support of easels, small albums, and visual tops for desks, all of which products 'Anco' purchases entirely or partially from outside sources;

"That 'Anco' from his long association with the visual display industry considered these alleged trade marks to be every day common, descriptive terminology, used by the trade and manufacturers to identify substantially the same products and/or materials and/or texture; \* \* "

If it is true that the marks are used by many manufacturers to describe the same or similar products, then the defendant made no false representation or designation in using them in connection with its goods. This is a factual issue which must be resolved on trial. Until this issue is resolved there remains at least some doubt that the plaintiff will ultimately prevail on this issue, and we cannot say that the judge abused his discretion in denying a preliminary injunction on this cause of action.

■ Finally, in its fourth cause of action, the plaintiff contends that the acts complained of in the first three causes of action also constitute unfair competition and infringement of common law trademarks. We find no abuse of discretion in denying a preliminary injunction on this cause of action for the same rea-

sons that we found no abuse of discretion in denying that remedy with respect to the second and third causes of action. In addition to the copyright infringement, which we find should be enjoined, the plaintiff relies only on the alleged infringement of the two registered and the five unregistered trademarks. On the papers before us we have a substantial doubt whether the defendant has used marks sufficiently similar to the two registered marks to cause confusion. And with respect to the unregistered marks the papers before the District Judge raise an issue whether the marks are used exclusively in connection with the plaintiff's products or whether they are widely used in the industry to describe similar items. It is true that § 368–c(3) of the General Business Law of New York, McK.Consol.Laws, c. 20 broadens the traditional concept of unfair competition so that secondary meaning and confusion of goods are no longer required.[1] Flint v. Olect Jewelry Manufacturing Co., D.C.S.D.N.Y.1955, 133 F.Supp. 459; Noma Lites, Inc. v. Lawn Spray, Inc., D.C.E.D.N.Y.1955, 130 F.Supp. 124, affirmed, 2 Cir., 1955, 222 F.2d 716. But if the defendant has merely used to describe its goods designations widely used in the industry, there can be no injury to the plaintiff. Since the plaintiff's right to recover on the fourth cause of action remains in doubt, and since there has been no particularized showing of irreparable damage or anything to indicate that the harm to the plaintiff from denying an injunction will be substantially greater than the harm to the defendant from granting one, we cannot say that Judge Noonan abused his discretion in denying a preliminary injunction on this cause of action.

The order denying the preliminary injunction is therefore reversed and remanded for immediate entry of the injunction as to the first cause of action and affirmed as to the second, third, and fourth causes of action.

---

1. For Judge Clark's view that federal rather than state law controls see Maternally Yours v. Your Maternity Shop, 2 Cir., 1956, 234 F.2d 538 (concurring opinion).