**GEO–PHYSICAL MAPS, Inc., Plaintiff,**

v.

**TOYCRAFT CORPORATION, Harry Cohn, and Sigmund Koch, Defendants.**

United States District Court
S. D. New York.
May 16, 1958.

David Kallman, New York City, for plaintiff.

Harry Price, New York City, for defendants Toycraft Corp. and Harry Cohn, Leonard S. Knox, Chicago, Ill., of counsel.

FREDERICK van PELT BRYAN, District Judge.

In this action for infringement of copyright under 17 U.S.C. § 112 and unfair competition plaintiff moves for a preliminary injunction.

Plaintiff, a New York corporation is engaged in the manufacture and sale of a terrestrial globe on which the physical features of the world are depicted in relief, and which is known as "The Geo-Physical Globe—The Work Globe". Plaintiff produces two globes of this character, one six feet in diameter which is used by scientific institutions, universities and others interested in the geographical sciences, including various large industrial companies. The other is twelve inches in diameter and is designed for more general distribution, principally in the educational field. The relief map on each of these globes is the same except that each conforms to the respective scales of the two sizes of globes.

The physical features of the earth's surface appear in detail upon these globes and are modeled with gradual vertical exaggeration ranging from two hundred to one at sea level.

The geographical material depicted in relief upon the globes was developed by the plaintiff with the cooperation of well known geographers and cartographers and was compiled from numerous documentary sources such as other maps, surveyors' notes, sketches, photographs, travelers' reports, statistics and the like. The physical features of the earth, such as mountain ranges, rivers, lakes, seas, plains, elevations, coast lines, etc., are modeled to conform to the scientific data assembled, but necessarily represent an artist's conception of these features seen from a point in space. The techniques used in developing this material and depicting it in this manner are difficult and complicated, require highly specialized knowledge and extended research, and are plainly unique.

This is illustrated by such features as the Southern Arabian Peninsula which was prepared on the basis of landform maps made by Dr. Raisz and Professor Fairbridge of Columbia University on the basis of approximations from data obtained through actual observation of the area. Similarly the relief features of the Antarctic regions are prepared on the basis of information collated by Dr. Briesemeister obtained from Operation Deep Freeze. This area of the globe depicts mountain ranges discovered as late as January 14, 1956 by plane observation during that operation, and the data concerning these features was not available to the public until January 1958.

The plaintiff's globe was duly registered with the Register of Copyrights and, as manufactured and sold, contained a statutory copyright notice stamped upon the rim at the equator.

The defendant Toycraft, an Illinois corporation, of which defendant Cohn is president, has produced and now is offering for sale and selling a terrestrial relief globe twelve inches in diameter which is for all practical purposes a Chinese copy of the plaintiff's globe. Defendant Koch is alleged to be selling the same globe on behalf of another company.

Comparison of the physical features of the two globes leads to the inescapable conclusion that the defendants' globe was merely a copy of the plaintiff's copyrighted product.

This is fortified, and indeed established, by the comparison of various specific physical features. For example, Kodiak Island in the Aleutian chain is depicted as a peninsula on the plaintiff's globe. It is similarly depicted on the defendants' globe. The Yucatan Peninsula, which has only a slight elevation above sea level, has precisely the same swirls, ridges and exaggerated elevation on both globes. The Arabian Peninsula, though the conformation of the southern area is an approximation, has precisely the same conformations on each.

The engraving of the rivers of the Mississippi and Russian plains is somewhat different from that of the other river systems depicted on the globe and the character of the lines of these rivers is quite distinctive. They are plainly identical on both globes. The same can be said of the plains of Poland and India, the coast line of Malabar, of the Himalayas and the other enormous mountain ranges in Southern Asia, which are perhaps the most striking features of the relief projection. Bermuda, Christmas Island, the Lesser Antilles, Trinidad, Guam, Okinawa, Midway and other islands are all missing on both globes.

The only differences to which defendants point are that the plaintiff's globe is white in color and the defendants' is blue; that the meridian lines running through the water areas on plaintiff's globe are raised whereas on defendants' globe they are depressed; that there is a land mass in the Arctic region on defendants' globe which is not on plaintiff's; that defendants have stuck in a few obscure islands which plaintiff's globe omits; that the plaintiff's globe is of thin plastic in two halves which can be put together by the user, whereas defendants' globe is a ready-made hollow sphere of somewhat heavier material, and that the degrees of longitude on the equatorial rim are more frequently numbered on defendants' globe than on plaintiff's.

The points which defendants cite to indicate differences and lack of copying in fact indicate just the opposite. For example, in several places on defendants' globe where the meridian lines run through islands there are traces of some raised meridian lines which are used on plaintiff's globe which defendant evidently failed to remove when it made the copy. The crude splotch of land mass at the North Pole added on the defendants' globe does not in fact exist for there is merely pack ice there. Plainly this was added merely to try to insert some feature which would not be an exact copy. The addition of a few Pacific islands which do not appear on plaintiff's globe

but which are mere dots, is in the same category. The fact that degrees of longitude on the equatorial rim are more frequently numbered on defendants' globe than on plaintiff's is one of those mechanical distinctions without a difference which merely serve to emphasize that for all practical purposes the globes are identical. In sum, the material on the defendants' globe has been appropriated lock, stock and barrel from the plaintiff's.

The affidavits submitted by defendants in opposition include an affidavit of one Rush which is significant for its omissions rather than otherwise. Rush, describing himself as a commercial sculptor, states that he spent 167½ hours in modeling defendants' globe from July 18, 1957 to November 10, 1957, which was some months after plaintiff's copyright was obtained. But Rush could not have prepared the model from his own imagination. It is plain that the only place he could have gotten the material from which the model was made was from the plaintiff's globe which he reproduced.

Some light is thrown on what he may have done by the half of the plaintiff's globe submitted by the defendants upon the argument, which defendants claimed did not have upon it the requisite copyright notice. An examination of this exhibit shows traces of green plasteline on the rim of the northern hemisphere indicating that this or similar material had been used to make a bed prior to pouring plastic for a mold to be taken of plaintiff's globe. Moreover, an examination of the place on this exhibit where the copyright notice appeared on plaintiff's globe (and such notice was part of the mold from which the globe was prepared) shows evidence that raised lettering at this point had been removed, indicating that the copyright notice had been deliberately taken off by someone before the submission of this exhibit to the court.

The defendants show nothing of any substance which would call into question the validity of plaintiff's copyright. They refer to an article in "The Military

Engineer" which was published prior to the filing of notice of copyright concerning the plaintiff and the plastic and relief globes which it was developing which they claim constitute prior publication without copyright of the material which plaintiff seeks to have protected. There is no merit in this claim. The article in question merely describes in general terms the type of planning and the techniques which were being used to assemble the material for the globe and to model it. There is no discussion in the article of the material itself or any of its details. No one reading the article could possibly produce the plaintiff's globe from what it disclosed. There was no prior publication. This article does not remotely indicate prior dedication to the public, nor did it place the plaintiff's globe in the public domain. Cf. American Tobacco Co. v. Werckmeister, 207 U.S. 284, 299–300, 28 S.Ct. 72, 52 L.Ed. 208; Patterson v. Century Productions, 2 Cir., 93 F.2d 489, 492, certiorari denied 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1114; Alfred Bell & Co. v. Catalda Fine Arts, D.C.S.D.N.Y., 74 F.Supp. 973, 976, affirmed 2 Cir., 191 F.2d 99; Ziegelheim v. Flohr, D.C.E.D.N.Y., 119 F.Supp. 324; Ball, Law of Copyright & Literary Property, §§ 60–65, 190, 222.

It is plain that defendants are selling and marketing their globe in competition with the plaintiff's and are attempting to do so among plaintiff's own agents, dealers and distributors. The defendants' globe was exhibited at the Toy Fair in New York in March of this year and defendant Toycraft had a room at the Hotel New Yorker at that time which it used for sales purposes. During this period one of plaintiff's officers talked with defendant Cohn, president of defendant Toycraft, who sold one of defendants' globes to him, and told him he was prepared to take orders for them. Defendants have published sales literature which contains pictures of their globe similar to pictures used by the plaintiff and which stress similar selling points. None of this do defendants deny.

Plaintiff has established prima facie and without contradiction that defendants are invading its market, soliciting its customers and attempting to sell their product in direct competition with plaintiff's.

Before passing to the question of what relief plaintiff may be entitled to under these circumstances, however, it is necessary to consider various questions of venue and jurisdiction raised by the defendants. As to each of the three defendants the question has been raised as to (a) whether the court has jurisdiction over the person and (b) whether venue is properly laid in this district.

28 U.S.C. § 1400(a) provides that suits arising under the Copyright Law "may be instituted in the district in which the defendant or his agent resides or may be found." Plaintiff bases its claim of jurisdiction over the defendants upon this section.

However, Section 1400(a) relates to venue and not to jurisdiction over the person. Deutsch v. Times Pub. Corp., D.C.S.D.N.Y., 33 F.Supp. 957; National Electric Service Co. v. Acton, D.C.S.D. N.Y., 59 F.Supp. 637. In order for this action to be maintained the court must both have acquired jurisdiction over the defendant's person and the venue must be properly laid in this district. These questions will be separately considered as to each defendant.

### As to defendant Toycraft Corporation

Defendant Toycraft is incorporated in Illinois and maintains its principal place of business in that state. Service of the summons and complaint and the order to show cause upon this motion was attempted to be made upon it by delivering copies to defendant Cohn, its president, at the Hotel New Yorker in this district.

As a practical matter the test for determining whether a non-resident corporation or its agent is "found" within a district, within the meaning of 28 U.S.C. § 1400(a) is the same as that for determining whether the corporation is

amenable to suit in a jurisdiction other than that in which it is incorporated. In so far as defendant Toycraft is concerned, the question of personal jurisdiction and of venue are one and the same. Backer v. Gonder Ceramic Arts, D.C.S. D.N.Y., 90 F.Supp. 737. In order for a non-resident corporate defendant to be amenable to suit in this district under the standards enunciated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, it must affirmatively appear that the defendant's activities in New York were so systematic and continuous as to make it present in this jurisdiction for purposes of service of process. The question is, did Toycraft have "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice," to compel it to defend this action here. International Shoe Co. v. State of Washington, supra, 326 U.S. at page 320, 66 S.Ct. at page 160.

The papers before me do not sufficiently establish that such standards have been met. All that plaintiff shows to establish contacts and ties of Toycraft with this state is the following:

During the annual Toy Fair in New York City defendant Toycraft maintained "a showroom and salesroom" at the Hotel New Yorker in charge of its president, Harry Cohn. Plaintiff's representatives who visited this room said that Cohn told them that he had full authority to enter into agreements for the distribution of the defendants' globes, that he had sold many at the Toy Fair, and that if they wished to make purchases he could arrange immediate deliveries. They thereupon purchased one such globe from Cohn and received immediate delivery.

■ Plaintiff has made no showing as to the length of time defendant Toycraft maintained this room, or how temporary its occupation was, or as to whether its activities were systematic or continuous in New York. The defendant denies that this was anything more than a brief and temporary exhibit at the Toy Fair.

There is nothing to show that Toycraft was carrying on business in New York to the extent necessary to render it amenable to the jurisdiction of this court. Its activities have not been shown to have been continuous or systematic. On the present papers they appear to be sporadic, to say the least. When an officer of a non-resident corporation comes into a jurisdiction on a temporary visit, even if it be for business purposes, he does not thereby subject his corporation to the jurisdiction of the forum. Cargill v. Marks Credit Clothing Co., D.C.S.D.N.Y., 29 F.Supp. 725. See, also, Lumiere v. Mae Edna Wilder, Inc., 261 U.S. 174, 43 S.Ct. 312, 67 L.Ed. 596.

■ The only other material bearing on the question of jurisdiction over Toycraft is an affidavit by plaintiff's attorney alleging on information and belief that one Trifon of Trifon Associates, 290 Collins Avenue, Mt. Vernon, N. Y., " * * * had stated that he is the representative of Toycraft Corporation, one of the defendants herein. Mr. Trifon is actively engaged in the solicitation of orders for defendant's globe, having left samples thereof at former customers of plaintiff, together with literature bearing said defendant's name. * * * "

The affidavit is purely hearsay. Moreover, it does not state anything from which the court could ascertain the nature of the relationship between Trifon and defendant Toycraft, or the extent of Trifon's alleged activities on the part of Toycraft. Even if the facts are taken to be true they do not establish that Trifon is an agent of Toycraft or carrying on such activities on Toycraft's behalf which would subject it to jurisdiction here. See National Electric Service Corp. v. Acton, D.C.S.D.N.Y., 59 F.Supp. 637.

■ Thus, plaintiff has failed to establish that this court has acquired jurisdiction over Toycraft. In the light of its failure to do so, this court cannot grant the preliminary relief which plaintiff seeks, and its motion as to defendant Toycraft will be denied without prejudice.

■ However, under the circumstances here plaintiff is given leave to renew its motion if, after taking depositions as to the extent of defendant Toycraft's activities in this district, or by other proof, plaintiff makes a proper showing that this defendant is amenable to suit in this district and that this court has jurisdiction over it. Urquhart v. American-LaFrance Foamite Corp., 79 U.S.App.D. C. 219, 144 F.2d 542, certiorari denied 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625; Chero v. Compania Maritima Hari Ltda. Panama, S.A., D.C.S.D.N.Y., 15 F.R.D. 110; Anderson v. British Overseas Airways Corp., D.C.S.D.N.Y., 149 F.Supp. 68; Mikulewicz v. Standard Electrical Tool Co., D.C.S.D.N.Y., 20 F.R.D. 229.

### As to defendant Harry Cohn

■ This court plainly has personal jurisdiction over defendant Cohn since he was personally served with process in this district. Rule 4, F.R.C.P., 28 U.S.C. Venue also lies here since Cohn was "found" here within the meaning of 28 U.S.C. § 1400(a) when he was served. The fact that Cohn is a resident of Chicago and was here only temporarily does not deprive the court of venue. The venue requirements of 28 U.S.C. § 1400 (a) are met when an individual defendant is properly served within the district. McDevitt v. Dorsey, D.C.N.D.Ohio, 67 F.Supp. 818. See, also, Lederer v. Ferris, C.C.S.D.N.Y., 149 F. 250.

Since the court has personal jurisdiction over defendant Cohn and venue is properly laid, relief may be granted as against him.

### As to defendant Sigmund Koch

■ Koch was served in Brooklyn "within the territorial limits of the state in which the district court is held" and the court therefore has acquired personal jurisdiction over him. Rule 4(f), F.R.C. P. Since service was effected in the Eastern District of New York and not in this district, there is nothing to show that Koch was "found" in this district within the meaning of 28 U.S.C. § 1400 (a). Venue therefore does not properly lie in this district as to this defendant.

Salvatori v. Miller Music, Inc., D.C.E.D. N.Y., 35 F.Supp. 845.

■ However, defendant Koch is not represented by the attorneys who appear for defendants Toycraft and Cohn. He has f( led to appear or answer in the action and has defaulted on this motion. The defense of improper venue is one which a defendant may assert or waive at his option. Waiver may be accomplished either by appearing and contesting the action on the merits, or by failing to appear and suffering a default. Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252; Clover Leaf Freight Lines, Inc., v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626, certiorari denied 335 U.S. 823, 69 S.Ct. 46, 93 L.Ed. 377. See, also, 28 U.S.C. § 1406(b).

■ By his failure to appear in the action or to respond to the order to show cause served upon him, defendant Koch has waived any objections he may have had as to venue. The court, having personal jurisdiction over him, may grant any relief to which plaintiff may be entitled as against him.

Plaintiff has established prima facie a flagrant violation of its copyright. No serious question has been raised as to the validity of the copyright. It has shown that Toycraft is presently engaged in manufacturing, advertising, marketing and selling a globe which was copied directly from plaintiff's copyrighted globe in competition with the plaintiff. While it is denied that the Toycraft globe is a copy the facts belie such denial and show the opposite. Defendant Cohn, as president of Toycraft is plainly thoroughly familiar with all that went on and is a prime participant in this course of conduct.

■ Plaintiff alleges it will suffer irreparable harm in the event that defendants are not restrained from pursuing their present course. While plaintiff's papers do not spell out the details of the damage which it would suffer in the absence of relief, in as plain a case of copyright infringement as has been

made out here a detailed showing of irreparable harm by the plaintiff is not a prerequisite to a preliminary injunction. Rushton v. Bitale, 2 Cir., 218 F.2d 434; Houghton Mifflin Co. v. Stackpole Sons, 2 Cir., 104 F.2d 306, certiorari denied 308 U.S. 597, 60 S.Ct. 131, 84 L.Ed. 499; Inge v. 20th Century Fox Film Corp., D.C.S.D.N.Y., 143 F.Supp. 294.

Under all the circumstances it is improbable that money damages would be an adequate remedy for the impairment or possible destruction of the market which plaintiff has built up for this unique product. The loss of such market might well be irreparable. Moreover, the difficulties of detecting particular instances of sales in violation of copyright and of computing the exact amount of damages suffered would be likely to prove insurmountable. If there be any inconvenience or loss to the defendants arising from the issuance of a preliminary injunction that fact does not appeal to the court's conscience where the infringement is as blatant as it is here. See L. C. Page & Co. v. Fox Film Corp., 2 Cir., 83 F.2d 196.

Plaintiff has plainly made out a case which entitles it to preliminary injunctive relief against defendant Cohn to protect it from further injury pending the determination of this action. See Joshua Meier Co. v. Albany Novelty Mfg. Co., 2 Cir., 236 F.2d 144; American Visuals Corp. v. Holland, 2 Cir., 219 F.2d 223; Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 206 F.2d 738; American Code Co. v. Bensinger, 2 Cir., 282 F. 829; Inge v. 20th Century Fox Film Corp., supra.

Plaintiff is entitled to preliminary injunctive relief against defendant Koch also. It is alleged that he too is engaged in marketing and selling the copy of plaintiff's copyrighted globe, and that he has been participating in such activities with the other defendants. Since he has defaulted these allegations as to him stand uncontroverted.

An order will therefore be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure restraining defendants Cohn and Koch, pending the hearing and determination of this action, and their agents, servants, employees and attorneys, and all persons in active concert or participation with them, from directly or indirectly manufacturing, using, supplying, selling, advertising or offering for sale, relief globes or any other product covered by plaintiff's copyright registration or from infringing upon or violating said copyright. Such order will be conditioned upon plaintiff furnishing security in the sum of $3,500 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained, as required by Rule 65 (c), F.R.C.P.

This opinion constitutes my findings of fact and conclusions of law on this motion under Rule 52.

Settle order, complying fully with Rule 65, on notice.