**CONSUMERS UNION OF UNITED STATES, INC., Plaintiff**

v.

**HOBART MANUFACTURING COMPANY and Speed Queen Atlantic Company, Inc., Defendants.**

United States District Court
S. D. New York.
April 20, 1960.

Karpatkin & Karpatkin, New York City, for plaintiff.

White & Case, New York City, for defendant Hobart Manufacturing Co.

Moses Block, New York City, for defendant Speed Queen Atlantic Co., Inc.

DIMOCK, District Judge.

This is a motion for a preliminary injunction against continuation of alleged

copyright infringement and unfair competition.

The conduct complained of is the defendants' circulation among distributors and dealers of a Sales Bulletin which is alleged to have contained copies of material published in plaintiff's copyrighted magazine "Consumer Reports". Plaintiff accepts as correct Judge Murphy's description of its business in Consumers Union of United States, Inc. v. Lectra Sales Corp., D.C.S.D.N.Y., 179 F.Supp. 161, 162: "Plaintiff, a membership corporation, is a testing company which publishes a magazine called Consumer Reports wherein it provides information and advice relating to consumer goods but in which it does not promote commercially any product tested and reported upon."

The magazine, plaintiff alleges, sells monthly 650,000 copies to subscribers and 150,000 copies on newsstands at sixty cents a copy. Defendant, Hobart Manufacturing Company, hereinafter Hobart, manufactures automatic dishwashers under the name KitchenAid. Defendant Speed Queen Atlantic Company, Inc., hereinafter Speed Queen, is one of its distributors.

The December 1959 number of plaintiff's magazine "Consumer Reports" contained a Report entitled "Automatic Dishwashers". It rated the various makes on the market under the heads "Acceptable-Excellent", "Acceptable-Fair to Good" and "Acceptable-Fair". Besides these classifications the various makes were described with favorable or unfavorable comments on various features. Out of eighteen makes, defendants' was rated second and placed in the "Acceptable-Fair to Good" class.

Defendant Hobart, when the Report came to its attention, got out about eighty copies of its Sales Bulletin No. 176 and sent them to its distributors. Defendant Speed Queen made copies which it sent to dealers. The Sales Bulletin was entitled "Well, What About That December Magazine Report?" The burden of the Sales Bulletin was an effort to counteract the rating of a competitor's product as number one. The first line encourages the distributors by saying "*You* know you are distributing the finest dishwasher made—KitchenAid! We'll keep it that way for you, your dealers and the user." The authors of the Bulletin continue by saying that, since a number of Hobart's distributors have asked for their thoughts, they are attaching a comparison of KitchenAid and the top ranked device which will provide the distributors with more information. The Bulletin continues, "To actually *see* the difference, however, we suggest you buy or borrow one of these units for comparison at your next sales meeting." The authors then voice the complaint that, since the Report states that the top ranked device does not dry so well as some other machines, they wonder why the top rating. Then the Report is criticized for ignoring seven specified factors and the authors of the Bulletin go on for a page to describe the virtues of KitchenAid. In the course of that they say "Do you remember another magazine report in 1958 that rated KitchenAid so highly? Even this latest report said: 'KitchenAid judged above average in overall convenience of use; drying ability satisfactory; and relatively quiet.' We don't believe KitchenAid received the real rating it deserves but we do appreciate their acknowledgement, in part, of KitchenAid superiority." The Bulletin next says, "Of course, we don't want to be supercritical, but when a report is so inaccurate about a matter as simple as dishwasher finishes (they reported KitchenAid 'available in white but choice of colors and front panel materials on special order at extra cost'), we just wonder how they ever manage the much more complicated procedure of dishwasher testing!" This part of the Bulletin ends with the exhortation, "The REAL 'Report on KitchenAid' comes from the world's most critical and experienced dishwasher experts—*hundreds of thousands of users*—who say, without qualification, KitchenAid *is* 'The Finest Made'! So, go out and SELL it!"

There is then the statement that the top ranker has two types of machine, one of which is the impeller type and is not highly rated in the Report, and the other pays tribute to the KitchenAid by using a revolving spray.

In what I have quoted there are five instances of "copying" from the Report: 1. The fact that the competitor was rated number one. 2. The statement that the top ranked device did not dry so well as some other machines. 3. The statement that KitchenAid was judged above average in overall convenience of use; drying ability satisfactory; and relatively quiet. 4. The statement that KitchenAid is available in white but choice of color and front panel materials on special orders at extra cost. 5. The statement that, of the top ranker's two types of dishwasher, the impeller type is not highly rated in the Report.

The Bulletin goes on for three and a half pages of parallel columns comparing KitchenAid favorably with the top ranked product and then returns to plaintiff's Report. The authors say "we have dug up some rather pertinent comparative excerpts from the report on *other* competitive dishwashers which you can use to advantage after you check". Then follow fourteen unfavorable items about five classes of products, winding up with the statement, "There are others, too, you will find in the December report."

■ In no instance did material which was copied into the Bulletin have any original literary form which would entitle it to copyright protection. Each item was a bald statement of fact which could hardly have been stated in any different fashion. I am faced with an attempt to clothe with copyright protection a compilation of facts. It cannot be gainsaid that that is one of the functions of the copyright system. A man who has tramped the streets and compiled a directory can, by copyrighting the product, obtain protection against a competitor who merely copies his work. He could not, however, obtain protection against someone who published an article upon the distribution of residents in relation to national origin and who used a compilation from the directory for locating the concentrations of persons bearing names characteristic of the various national origins. The directory cases are exceptions to the rule that facts are not a proper subject of copyright. That exception does not go so far, however, as to prohibit non-competitive use of facts set forth in a copyrighted collection. See Kane v. Pennsylvania Broadcasting Co., D.C.D. Pa., 73 F.Supp. 307.

The items copied here are of three kinds: 1. Facts used in criticism of the Report. 2. Facts favorable to defendants. 3. Facts unfavorable to competitors which are to be checked for use in selling defendants' product.

■■ Taking up the first of these, it must be admitted that one cannot, by copyrighting his unfavorable remarks about another, prevent that other from quoting those remarks and refuting them. Certainly defendants were entitled to say that plaintiff had given top rank to a competitor and to attack that conclusion by quoting other parts of plaintiff's statement that weakened it.

There is perhaps more doubt about the second and third types, statements favorable to defendants and unfavorable to competitors. It might be urged that defendants went into competition with plaintiff when they copied into the Sales Bulletin the nice things that plaintiff said about them and the unpleasant things that plaintiff said about their competitors and sent it to their distributors instead of buying a sufficient number of copies of the article at sixty cents apiece and marking them and sending them around. If so, the maximum damage caused to plaintiff by Hobart for circulating eighty copies can be accurately fixed at eighty times sixty cents or forty-eight dollars. Nevertheless the terms of the Bulletin, far from indicating competition between defendants and plaintiff where defendants circulated their Bulletin instead of plaintiff's Report, presuppose possession of a copy of the Report by every reader.

■ Plaintiff says that it does suffer damage in excess of the loss of sales be-

cause the use of its findings by manufacturers for sales purposes robs plaintiff of the confidence of its subscribers in its impartiality. That use, however, is inherent in its business so long as it makes its findings available to every manufacturer at sixty cents a copy. A reader is no more likely to suspect partiality of plaintiff when a manufacturer sends out a bulletin quoting favorable findings by plaintiff than when the manufacturer sends out a marked copy of the plaintiff's magazine containing the findings. Plaintiff suffered no more damage to its reputation as a result of circulation of the Bulletin than it would have as a result of the admittedly permissible circulation of the Report.

■ The harm possible to plaintiff by circulation of defendants' Sales Bulletins among distributors and dealers is so trivial that, even if it involved a technical violation of copyright, it would not warrant a preliminary injunction. See Miller Harness Company v. Arcaro & Dan's Saddlery, D.C.E.D.N.Y., 142 F.Supp. 634.

■ For a second claim, plaintiff charges unfair competition in that, in three respects, the Report was incorrectly copied.

The Report criticized one device as having an unshielded metal impeller which was a mechanical hazard. Plaintiff says that this criticism was applied to an article with one trade name while defendants quoted it as having been applied to an article with another trade name.

The device was manufactured by a producer who put out some of its products under its corporate name as a trade name and some under a different trade name. Defendants grouped the comments as to both types under the corporate name. The criticized device was one that was marketed under the trade name. Grouping the comment under the corporate name did not constitute a statement even technically false, let alone misleading.

Neither of plaintiff's two other claims of misrepresentation is any more substantial.

In one, plaintiff says that defendants represented the Report as saying that the product of one competitor had poorer drying ability than other machines of different manufacturers. As a matter of fact the Bulletin, after referring in one line to one product of a manufacturer, type SU–70S, and then in the next line to another, type SU–80S, said of the second, "poorer drying ability". While that may be susceptible of the construction that type SU–80S had poorer drying ability than some unspecified other types rather than the previously specified type, I cannot assign much importance to that possibility in the absence of any proof that anyone adopted that construction and was deceived thereby.

The second remaining instance of alleged misrepresentation is where defendants, after stating that the top ranked manufacturer had machines of two types one of which used an impeller in the bottom of the wash chamber, said that this type was not highly rated in the Report. As a matter of fact the Report listed four types of the top ranker's product, as to two of which the statement was made, "Unshielded metal impeller (see story)." The story contained a subdivision, headed "Hazards—electrical and mechanical", of which two sentences read, "A number of impeller-type machines had no shielding or inadequate shielding over the impeller. If a piece of silverware or any other small item were dropped into the impeller and not noticed, either the item or the impeller (depending on whether the latter was plastic or metal) might be damaged when the machine started up." Plaintiff points to another statement in the Report that neither of the three basic types of mechanism for throwing water on the dishes, wash-arm, spin-tube or rotary impeller, "proved inherently better or worse than the others" as demonstrating the inaccuracy of the statement that the top ranker's impeller operated type was not highly rated in the Report. The statement that neither type proved inherently better or worse than the others does not cancel out the statement to the effect that the impeller type is a mechanical hazard.

The statement that the impeller type was not highly rated was justified by the Report as a whole.

Without passing on the question of law whether incorrectness of purported quotations from plaintiff's Report could ever be the basis for a valid claim of unfair competition, any incorrectness here charged is again so trivial as to fall far short of adequacy as a basis for a preliminary injunction.

Motion denied.

So ordered.