MERCURY RECORD CORP., Plaintiff,
v.
BUCKINGHAM RECORD CO., Inc.,
Defendant.

United States District Court
S. D. New York.
Dec. 20, 1963.

Paul J. Kern, New York City, Rhoda H. Karpatkin, Miles Lourie, New York City, of counsel, for plaintiff.

Maxwell Okun, New York City, for defendant.

McLEAN, District Judge.

This is an action for unfair competition in the sale of phonograph records. The complaint seeks a permanent injunction and damages. Plaintiff now moves for a preliminary injunction.

There is no real dispute as to the essential facts, which I find to be as follows:

Plaintiff, a Delaware corporation, is engaged in the business of manufacturing and selling phonograph records. On or about August 15, 1963, plaintiff put on the market a long-playing phonograph record of songs sung by a Belgian nun named Soeur Sourire. The record is enclosed in an album which contains in addition to the record itself printed material descriptive of Soeur Sourire. The first song on the record is called "Dominique." Since August 1963 this song has gained a considerable popularity and plaintiff's sales of its record have been substantial. Plaintiff has sold the record for distribution to the retail trade. The retail price of the record album is $4.98 for the stereophonic version, and $3.98 for the Monaural.

The cover of the album is inscribed at the top "Soeur Sourire" and in larger type, "The Singing Nun." Plaintiff's seal appears alongside the title. The cover is decorated with a drawing in black and white of a seated nun playing a guitar. Six girls are listening to her. It is an outdoor scene depicting a tree, several conventionalized flowers and a number of large birds who also appear to be listening.

Also on or about August 15, 1963, plaintiff placed on the market a 45 r.p.m. record of two of the songs contained on the other record, one of which was "Dominique." The selling price of this 45 r.p.m. record is not specified.

When this record was first placed on the market, it was enclosed in a green paper jacket bearing the name Philips in large type. This jacket has no resemblance whatsoever to the cover of the album above referred to. However, on or about October 24, 1963, plaintiff adopted a new jacket for the 45 r.p.m. record which was decorated with a drawing identical to that on the cover of plaintiff's long-playing record album. This cover was labeled at the top, "Dominique" under which appears "Soeur Sourire the Singing Nun." In smaller type at the top appears the legend: "From 'The Singing Nun Album' Philips PCC 203 PCC 603."

Since October 24, 1963, some 225,000 copies of the 45 r.p.m. record enclosed in this jacket have been shipped by plaintiff.

Defendant is a New York corporation which also is engaged in the business of manufacturing and selling phonograph records. On or about November 9, 1963, defendant placed on the market a record containing a number of songs, one of which is the song "Dominique." Defendant has since sold it for distribution to the retail trade. The retail price of this record is 99¢.

The record is contained in a jacket which also is decorated with a drawing in black and white depicting a nun playing a guitar outdoors. Four boys and girls are watching her. The nun is also observed by four large birds who look very much like the birds on plaintiff's album cover and a number of conventionalized flowers are dotted about which are substantially similar to the flowers on plaintiff's album. Instead of the single tree on plaintiff's album cover, defendant's jacket depicts a house and several trees.

At the top of defendant's cover appears the word "Dominique" in type identical with that on the jacket of plaintiff's 45 r.p.m. record. Underneath the word "Dominique" appears the legend, "The Singing Nun's Song." The foliage of one of the trees obscures the word "Song" and partially obscures the " 's" on the word "Nun's" so that the casual observer might very well read the legend as "The Singing Nun."

Underneath these legends in small type appears "Le Choeur des Enfents de Montmartre." This is a children's choir which sings the selections contained on the record which include not only "Dominique" but such well-known compositions as the "Marseillaise." None of the songs is sung by Soeur Sourire herself.

No seal appears on the face of the jacket.

Defendant asserts that it is duly licensed by the proprietor of the copyright of the song "Dominique" to manufacture and sell a record of that song. Plaintiff does not dispute this, but the fact is of no importance here. We are concerned in this case not with the song itself, but with the jacket or cover in which the respective records are enclosed.

■ A comparison of defendant's jacket with the cover of plaintiff's long-playing record album reveals that, although they are not identical, the similarity is very marked. Plaintiff has offered no evidence to show that consumers have actually been confused. Defendant has offered none to show that they have not. Evidence of actual confusion is not necessary. Pastificio Spiga Societa Per Azioni v. De Martini Maca-

roni Co., Inc., 200 F.2d 325 (2d Cir. 1952).

■ I find that it is likely that such confusion will exist and that defendant's record will be passed off as that of plaintiff. This is all that is required to sustain a preliminary injunction. My-T Fine Corporation v. Samuels, 69 F.2d 76 (2d Cir. 1934). Cf. Standard Brands, Inc. v. Smidler, 151 F.2d 34 (2d Cir. 1945).

When one compares defendant's jacket with that which plaintiff has recently been using on its small 45 r.p.m. record, the similarity is even more marked and the likelihood of confusion is even more apparent. With respect to this record, defendant contends that no competition exists, unfair or otherwise, between the parties, because plaintiff's record is sold primarily to juke box operators who are purchasers of a type different from the retail customers who buy defendant's record. Even if this be the fact, I am not persuaded that it is significant. It has been held that a manufacturer of "V–8" vegetable juice may enjoin, as unfair competition, the use of the words "V–8" on cartons containing vitamin tablets. Standard Brands, Inc. v. Smidler, 151 F.2d 34 (2d Cir. 1945).

It follows from that decision that plaintiff is entitled to a preliminary injunction here.

■ Defendant maintains that as soon as the complaint in this action was filed, defendant discontinued the use of the offending jacket. I need not determine whether this is the fact, for even if it is, it affords no reason for denying a preliminary injunction. Consumers Union of United States, Inc. v. Admiral Corporation, 186 F.Supp. 800 (S.D.N.Y. 1960). Cf. Consumers Union of United States, Inc. v. Lectra Sales Corporation, 179 F.Supp. 161 (S.D.N.Y.1959).

■ Defendant asserts that it did not intend to copy plaintiff's jacket and did not intend to pass off its product as plaintiff's. I find that hard to believe, in view of the fact that both plaintiff's album cover and its jacket for the small record were on the market before defendant's. The similarity is too marked to be the result of coincidence. Indeed, proof of actual intent to imitate and to pass off would seem to be unnecessary. John H. Woodbury Inc. v. William A. Woodbury Corporation, 23 F.Supp. 162 (S.D.N.Y.1938); Lincoln Restaurant Corporation v. Wolfies Restaurant, Inc., 186 F.Supp. 570 (E.D.N.Y.1960).

In any event, I find that such intent exists here.

■ My conclusion is that defendant has competed unfairly with plaintiff, that because of difficulties of proof, money damages would be inadequate, and that therefore plaintiff is entitled to a preliminary injunction enjoining defendant from using the jacket which it was using at the time that the complaint was filed. There was some discussion upon the argument as to whether plaintiff is entitled to include within the scope of the injunction all wholesalers and retailers who are selling defendant's record in this jacket. These persons are not parties to this action and I do not believe that they can properly be included. The injunction should be in the usual form enjoining defendant, its officers, agents, servants, employees, attorneys and persons acting under its direction and control.

One further question remains for consideration. When the order to show cause bringing on this motion was first submitted to me, it contained a temporary restraining order which I eventually signed. Notice of the application was given to defendant's attorneys and a conference ensued in my chambers in which the parties attempted to agree upon a settlement of this action, at least as far as the claim for injunctive relief is concerned, by agreeing upon the design of a new jacket for defendant's record. No binding commitment was made at that time, but the respective attorneys stated that they would discuss the matter further. Apparently negotiations continued for some time thereafter. Defendant now claims that plaintiff agreed to the new design. Plaintiff disputes that claim. I deem it unnecessary to attempt

to decide that question of fact now, for in my view it does not affect plaintiff's right to a preliminary injunction against the use by defendant of the jacket which concededly it was using at least up to the time that the complaint was filed.

It seems possible, however, in view of this unfortunate misunderstanding, that if defendant uses the new design, plaintiff may seek to punish it for contempt of the preliminary injunction, or may seek a new injunction against the new design. If either application is made, it will become necessary to determine whether in fact plaintiff agreed to the new design. If such an application is made and the parties wish to refer it to me, I will hear it.

Pursuant to Rule 52(a) this opinion constitutes the court's findings of fact and conclusions of law.

Motion granted. Settle order on notice.