CONSUMERS UNION OF UNITED
STATES, INC., Plaintiff,

v.

THEODORE HAMM BREWING CO.,
Inc., Defendant.

Civ. No. 13600.

United States District Court,
D. Connecticut.

May 19, 1970.

Catherine G. Roraback, New Haven, Conn., Marvin Karpatkin, Karpatkin, Ohrenstein & Karpatkin, John E. Le Moult, New York City, for plaintiff.

Harold V. Gorman, Jr., Hartford, Conn., Robert J. Sisk, Hughes, Hubbard & Reed, New York City, for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

This is another in a long series of actions[1] instituted by the plaintiff to enjoin a manufacturer from an allegedly unlawful and unfair use of material published in plaintiff's monthly magazine, "Consumer Reports."

The plaintiff is a nonprofit independent product testing and research organization which provides information and advice to the public relating to consumer goods and services. It is undisputed that its monthly magazine, "Consumer Reports," is a widely read and highly regarded publication. In counseling its readers, it relies upon laboratory tests, research, and the opinions of experts. The plaintiff has no affiliation with any commercial interests, accepts no advertising or product samples, and derives its income solely from the subscription and newsstand sales of its publications. The products tested are purchased on the open market at prevailing prices. Throughout the years plaintiff has developed a considerable reputation and prominence as an objective and impartial testing organization which candidly reports to the readers of "Consumer Reports." It is understandable, therefore, that the plaintiff zealously seeks to protect its reputation and goodwill by enjoining any unfair commercialization of its published material.

As a general rule the plaintiff's report on a product takes the form of an article with relevant commentary, followed by a series of ratings, such as "Check-rated" ($\checkmark$)—if the sample proved to be of high overall quality and markedly superior to other brands, "Best Buy"—if the product is not only highly rated but also priced relatively low, "Acceptable," "Not Acceptable," and so forth.

In the August 1969 issue of "Consumer Reports" plaintiff published an article entitled "Beers." While acknowledging that the number of brands of beer ran well into the hundreds, the article stated that "CU chose for testing 35 brands of beers—24 domestic and 11 im-

1. See, e. g., Consumers Union of United States, Inc. v. Primrose Plastics, 64 Civ. 312 (E.D.N.Y.1964); Consumers Union of United States, Inc. v. Hobart Mfg. Co., 189 F.Supp. 275 (S.D.N.Y.1960); Consumers Union of United States, Inc. v. Admiral Corp., 186 F.Supp. 800 (S.D. N.Y.1960); Consumers Union of United States, Inc. v. Velcro Sales Corporation, 59 Civ. 153-282 (S.D.N.Y.1959).

ported brands. (The choice among domestic brews is not as broad as it might seem; 25 brewers account for 90 per cent of domestic consumption, and three brewers alone account for about one-third of all the beer sold.) Our domestic beers included the five leading national brands, nine important regional brands in the northern, eastern, central and western states; two low-priced supermarket brands; five domestic prestige beers; and 11 leading beers imported from five countries. Thus, the Ratings list should include a good many of the beers you're accustomed to seeing on your supermarket's shelves."

The 35 brands of beer tested, all of which were rated "Acceptable," were divided into three groups "according to the taste panel's judgment of body": light-bodied, medium-bodied, and heavy-bodied. Each of the three groups was further subdivided into "classes in order of overall quality as judged by the panel": the light-bodied group had two classes, I and II; the medium-bodied group, four classes, I, II, III, IV; and the heavy-bodied group, two classes, II and III (no heavy-bodied beer received Class I stature). The introductory paragraph of the ratings also stated that "Except as noted, closely ranked products differed little in overall quality; judgments of overall quality are comparable from body group to body group."

Under Class I of the light-bodied group were listed two brands of beer in the following order: "Hamm's," "Coors." Under Class II of the medium-bodied beer were listed six brands of beer with the "Hamm's Waldech" brand mentioned first.

Hamm's Beer and Hamm's Waldech are brewed and sold by the defendant, Theodore Hamm Brewing Co., Inc., a Minnesota corporation licensed to do business in the State of Connecticut. Obviously pleased with the positions attained by its products on the ratings sheet, the defendant instituted a large advertising campaign designed to call the public's attention to the plaintiff's findings. This advertising has taken the following forms:

1) distribution of hundreds of plaintiff's article on "Beers";

2) "tagline" announcements over radio and television indicating that Hamm's Beer had been rated the top beer in the country in the August issue of "Consumer Reports";

3) newspaper and poster advertisements which depicted a large bottle of Hamm's Beer in front of smaller bottles of 15 other brands of beer;

4) memoranda to defendant's employees stating that "Hamm's was rated among the two best light-bodied beers in America," and that "Hamm's Waldech was selected best in Class II of the medium-bodied beers ahead of many other well known premium beers;"

5) "counter-cards" asserting, among other things, that Hamm's was "Rated FIRST Among Beers Americans Like Best by 'Consumer Reports' Magazine."

The plaintiff urges that the defendant's conduct constitutes copyright infringement, 17 U.S.C. § 1 et seq., unfair competition, 15 U.S.C. § 1125(a), and unjust enrichment, all of which is causing irreparable harm to the plaintiff's reputation, entitling it to a preliminary injunction.

I. *The Preliminary Injunction*

■■ It is a well-settled rule that a preliminary injunction is an extraordinary remedy which will be granted only upon a clear showing of probable success at trial and possible irreparable harm to the plaintiff which outweighs any possible injury to the defendant. Societe Comptoir de L'Industrie, etc. v. Alexander's Dept. Stores, Inc., 299 F.2d 33, 35 (2 Cir.1962). The burden upon a plaintiff is even heavier where, as in the instant case, the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits. Hambros Bank, Ltd. v. Meserole, 287 F.Supp. 69, 71 (S.D.N.Y. 1968). In determining whether prelimi-

nary relief is warranted, the court must be guided by normal equitable principles and weigh the practicalities of the situation. American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903, 905 (2 Cir. 1968); Gross v. Kennedy, 183 F.Supp. 750, 757 (S.D.N.Y.1960).

Applying these principles to the facts evident on the present state of the record, the Court concludes that the plaintiff is entitled to a preliminary injunction, but not to one as broad as it requests.

## II. *Irreparable Harm*

One of the defendant's main contentions is that, even assuming the plaintiff's probable success at trial, the evidence is insufficient to support a claim of irreparable harm. While it recognizes that a detailed showing of irreparable harm is not necessary with respect to a cause of action based on copyright infringement (Count One), American Metropolitan Enterprises of New York v. Warner Bros. Records, Inc., supra, 389 F.2d at 905; Geo-Physical Maps, Inc. v. Toycraft Corporation, 162 F.Supp. 141, 148–149 (S.D.N.Y.1958), the defendant claims that plaintiff failed to carry the heavier burden of proof required for injunctive relief against unfair competition and unjust enrichment (Counts Two–Five). Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 147 (2 Cir.1956).

The defendant points out that the parties are not competitors, that the plaintiff has suffered no financial loss, and that "readers' indignation" over the defendant's alleged improper conduct is minimal. Since the defendant is well able to respond to money damages after a trial, it argues that the plaintiff has an adequate remedy at law and equitable relief should be denied.

These contentions overlook the plaintiff's unique position in the business world. Throughout the years it has been scrupulous in avoiding even the slightest affiliation with any commercial interest. Its most important asset is its good name for independence and accuracy; its reputation as an impartial and untainted adviser is the foundation upon which the public's confidence rests. Consumers Union of United States, Inc. v. Lectra Sales Corporation, 179 F.Supp. 161, 162 (S.D.N.Y.1959). It is, of course, to be expected that now and then a manufacturer whose product is rated highly will seek to advertise the testimonial truthfully and fairly over as wide an audience of purchasers as possible. The extent to which such advertising is permissible is not here decided.

For our purposes we need only decide whether the plaintiff has made a clear showing of probable success at trial with respect to its claims of copyright infringement, unfair competition, and false and misleading advertising. If so, there is a likelihood that the plaintiff has and will in the future suffer harm. Because of the difficulties of proof, money damages may be inadequate; a preliminary injunction under such circumstances should issue to protect the plaintiff and the public interest.

## III. *Probable Success At Trial*

As indicated, the defendant has employed several different types and forms of advertisements based on source material from the plaintiff's August 1969 article on "Beers." The scope of such advertising has varied: from the full reproduction and distribution of the article to short "taglines" used on radio and television. Therefore, it would not be appropriate to discuss and rule on the challenged advertising as a unit; each type and form of publicity must be considered separately.

### a) *The Article and Rating Page*

It is uncontested that the defendant distributed thousands of copies of the article on "Beers" and its rating page. For the purposes of the present motion, the defendant has made no challenge to the validity of the plaintiff's copyright nor to the required notice of copyright. It is clear, therefore, that

the plaintiff is entitled to a preliminary injunction on its first cause of action. Concord Fabrics, Inc. v. Marcus Brothers Textile Corp., 409 F.2d 1315, 1316–1317 (2 Cir.1969); American Metropolitan Enterprises of New York v. Warner Bros. Records, Inc., supra, 389 F.2d at 905; Joshua Meier Co. v. Albany Novelty Mfg. Co., supra, 236 F.2d at 147.

■ Although reserving all rights "to challenge at trial the validity of the alleged copyright," the defendant has agreed to discontinue the practice complained of in Count One. It argues the issue is now moot and a preliminary injunction should not issue. However, the defendant's voluntary cessation of the activity is not a ground for a denial of a preliminary injunction. Mercury Record Corp. v. Buckingham Record Co., 226 F. Supp. 427, 429 (S.D.N.Y.1963); Consumers Union of United States, Inc. v. Admiral Corporation, 186 F.Supp. 800, 801 (S.D.N.Y.1960); Local Trademarks, Inc. v. Grantham, 166 F.Supp. 494, 508 (D.Neb.1967).

b) *Reference to "Consumer Reports"*

The Court understands that one of the plaintiff's primary objectives is to obtain an injunction *pendente lite* restraining defendant from making a further reference in its advertising to the "Consumer Reports" report on "Beers." The plaintiff contends that, even if there is truthful disclosure, the defendant should be restrained from using any tagline that contains the term "Consumer Reports" in linking its beer with the magazine's survey on beers.

The issue is a complex one; the parties cite no authorities directly on point. What little law there is seems to favor the defendant. See Consumers Union of United States v. Hobart Mfg. Co., 189 F.Supp. 275 (S.D.N.Y.1960). The Court also notes there is a practice in manufacturers' advertisements to quote correctly from leading periodicals a favorable mention of their products. A general proscription of such use by this Court on the present state of the record would be an unwise exercise of discretion.

■ Moreover, the balancing of possible injuries to each of the parties from a broad sweeping injunction leads to the conclusion that the defendant's harm far outweighs any possible injury to the plaintiff. If defendant is to benefit from a fair and honest use of its ratings in "Consumer Reports," it must do so now. The farther removed defendant's advertisement becomes from the date of plaintiff's publication, the less significant an impact the advertising will have on the market. The parties agree that a trial on the merits is not possible in the near future; a final determination favorable to the defendant in a year or two would leave it with only the right to capitalize on an obsolescent rating. Therefore, since an injunction *pendente lite* would effectively deprive the defendant of a right to which it may well be entitled, the plaintiff's motion for an injunction against any use whatever of a tagline which incorporates the term "Consumer Reports" is denied.

c) *"Top Beer In The Country"*

■ The plaintiff has introduced credible evidence that certain radio and television announcers, in the course of presenting defendant's commercials, have stated that "Hamm's has been rated the top beer in the country in the August issue of Consumer Reports."

The defendant denies responsibility for these statements; it contends the announcers deviated from the copy submitted to them by the defendant. The effect of this defense with respect to plaintiff's claim for money damages is left for the trial. For our purposes here, the defendant is enjoined from the use of any false and misleading tagline which indicates that its beer has been rated "the top beer in the country" or the "No. 1 beer in the country" by "Consumer Reports."

#### d) "No. 1 Among Beers Americans Like Best"

The defendant has and in the future intends to advertise that "Consumer Reports" rated its beer "First" or "No. 1" "Among Beers Americans Like Best." The tagline is usually accompanied by a footnote which indicates that the magazine "tested 35 of the top beers in the country."

The plaintiff claims this type of tagline constitutes false and misleading advertising because it "gives the impression either that plaintiff is cooperating in, or permitting the commercial exploitation of its findings, or that plaintiff has been highly irresponsible in its reporting by stating, on the basis of testing only thirty-five out of approximately 350 beers sold in the United States * * * [and] * * * it further gives the misleading impression that plaintiff rated and endorsed defendant's product in the glowing and superlative terms which defendant utilized in its advertising, while in truth and in fact plaintiff did no such thing." [Pl. Memo. pp. 6–7]

The defendant, on the other hand, contends its advertising presents a technically true account of the rating. It first rejects the plaintiff's claim that the 35 beers tested were not truly representative of the market. Quoting from plaintiff's own commentary in the article as to the percentage of the market its survey covered, and by its own affidavit on the point, the defendant alleges that the plaintiff's taste panel tested beers which account for over 80% of the country's consumption.

The defendant then carefully extracts factual statements from the article and the rating sheet from which it contends it properly extrapolated its own representations. Cf. Consumers Union of United States v. Hobart Mfg. Co., supra, 189 F.Supp. 275. It points out that Hamm's was rated first in Class I of the light-bodied beers. Though Coor's was also placed in this category, defendant claims that since Hamm's was listed before Coor's, in reverse alphabetical order, it is reasonable to conclude Hamm's Beer was rated first. Furthermore, light-bodied beers were described in the article as those which "Americans generally prefer." Completing the alleged syllogism, Hamm's therefore was "rated first among beers Americans like best." Corroboration, the defendant argues, is found in the penultimate paragraph of the article which states, "If you're looking for one of the light-bodied beers, you might be able to find the top-rated Hamm's or Coor's." (Plaintiff, in contrast, interprets this sentence to mean "top-rated Hamm's or top-rated Coor's). Thus defendant's position is that since Hamm's was found at the top of the list in Class I of the light-bodied category, and since this is the category which is preferred by Americans, it must be true that Hamm's was rated "No. 1 among beers Americans like best."

█ This recitation of the parties' opposing contentions indicates there are factual issues which must be resolved at trial. Until they are resolved, there are doubts that the plaintiff will ultimately prevail. These doubts, coupled with the fact that there is nothing to indicate that the harm to the plaintiff from denying the injunction will be substantially greater than harm to the defendant from granting one with respect to this form of advertising (see III(b), supra), require that the plaintiff's motion to restrain the defendant's use of the aforementioned form of advertising be denied. Cf. Joshua Meier Co. v. Albany Novelty Mfg. Co., supra, 236 F.2d at 147.

#### e) *Pictorial Representations*

Shown in certain of defendant's layout and art work in its newspaper and poster advertisements is a large bottle of Hamm's Beer at the apex of a triangular arrangement of smaller bottles of the other brands of beer mentioned in the light-bodied group on the rating sheet. Two aspects of the ad are challenged as being false and misleading.

█ The first is the disproportionate size of the Hamm's bottle of beer com-

pared to the remaining brands. The plaintiff argues that the Hamm's rating was not so superior or superlative to the other brands to justify this eye-catching advertisement. While this argument is not without merit, the Court believes this issue be best left for the trial. It may well be that some "puffing" of a top rating may be found a proper license in advertising for illustrative purposes; the Court, therefore, hesitates on a pretrial motion to define the permissible ambit in terms of inches.

Plaintiff's second complaint concerns Coor's Beer being depicted in the third rank of the triangle. Since the advertisement was designed to inform the beer-consuming public of the results of the "Consumer Reports" survey, this aspect of the pictorial advertisement is clearly false and misleading. Injunctive relief *pendente lite* under these circumstances is warranted.

IV. *Form of Injunction*

The Court believes its rulings on a representative set of defendant's advertisements will enable counsel to draft and submit for the Court's approval an appropriate form of preliminary injunction.

Accordingly, both parties shall settle order on notice.