**BOSTON PROFESSIONAL HOCKEY ASSOCIATION, INC., et al., Plaintiffs-Appellants,**

v.

**DALLAS CAP & EMBLEM MFG., INC., Defendant-Appellee.**

**No. 73–2592.**

United States Court of Appeals, Fifth Circuit.

April 7, 1975.

Rehearing Denied June 4, 1975.

---

1. Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

Ernest E. Figari, Jr., Dallas, Tex., Anthony L. Fletcher, New York City, for plaintiffs-appellants.

J. Manuel Hoppenstein, William D. Harris, Jr., Roger C. Clapp, Dallas, Tex., for defendant-appellee.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Nearly everyone is familiar with the artistic symbols which designate the individual teams in various professional sports. The question in this case of first impression is whether the unauthorized, intentional duplication of a professional hockey team's symbol on an embroidered emblem, to be sold to the public as a patch for attachment to clothing, violates any legal right of the team to the exclusive use of that symbol. Contrary to the decision of the district court, we hold that the team has an interest in its own individualized symbol entitled to legal protection against such unauthorized duplication.

The National Hockey League (NHL) and thirteen of its member hockey teams[1] brought this action to enjoin Dallas Cap & Emblem Manufacturing, Inc., from manufacturing and selling embroidered emblems depicting their trademarks. All plaintiffs assert a cause of action for common law unfair competition. The NHL and twelve of the plaintiff teams have secured federal registration of their team symbols as service marks for ice hockey entertainment services and seek relief under both provisions of the Lanham Act, 15 U.S.C.A. §§ 1114, 1125, which give statutory protection to such marks. The Toronto team has not secured federal registration of its symbol and, thus, has not alleged a cause of action against defendant for infringement of a registered mark under 15 U.S. C.A. § 1114, but is restricted to § 1125 which can encompass unregistered marks. The Vancouver team did not secure registration until after the alleged infringing act and has sued only for injunctive relief under § 1114, not for damages. None of the symbols of the various teams have been copyrighted.

The district court denied Lanham Act relief and granted only limited relief for unfair competition, requiring solely that defendant place on the emblems or the package a notice that the emblems are not authorized by or have not emanated from the plaintiffs. The claim for damages was denied.

### The Facts

The controlling facts of the case at bar are relatively uncomplicated and uncontested. Plaintiffs play ice hockey professionally. In producing and promoting the sport of ice hockey, plaintiffs have each adopted and widely publicized individual team symbols. During the 1971–72 season, more than eight million fans attended NHL games where they saw the team marks displayed on the jersey-fronts of the players and throughout the game programs. For each game on national television, between ten and twenty million hockey enthusiasts saw plaintiffs' marks. Other fans observed the team marks during more than 300 locally televised games a season and on a weekly television series entitled "National Hockey League Action" which is syndicated in over 100 markets. These figures do not include the millions who were exposed to plaintiffs' marks through sporting news coverage in newspapers, magazines and on television.

1. Boston Professional Hockey Association, Inc. (Boston Bruins); Niagara Frontier Hockey Corporation (Buffalo Sabres); Charles O. Finley & Company, Inc. (California Golden Seals); Chicago Blackhawk Hockey Team, Inc. (Chicago Black Hawks); The Detroit Hockey Club, Inc. (Detroit Red Wings); California Sports Incorporated (Los Angeles Kings); Northstar Financial Corporation (Minnesota North Stars); Madison Square Garden Corporation (New York Rangers); The Philadelphia Hockey Club, Inc. (Philadelphia Flyers); Pittsburgh Penguin Partners (Pittsburgh Penguins); Missouri Arena Corporation (St. Louis Blues); Maple Leaf Gardens, Limited (Toronto Maple Leafs); Medical Investment Corporation (Vancouver Canucks).

Plaintiffs have authorized National Hockey League Services, Inc. (NHLS) to act as their exclusive licensing agent. NHLS has licensed various manufacturers to use the team symbols on merchandise and has granted to one manufacturer, Lion Brothers Company, Inc., the exclusive license to manufacture embroidered emblems depicting the marks in question. In the spring of 1972, NHLS authorized the sale of NHL team emblems in connection with the sale of Kraft candies. That promotion alone was advertised on more than five million bags of candy.

Defendant Dallas Cap & Emblem Manufacturing, Inc., is in the business of making and selling embroidered cloth emblems. In August of 1968 and June of 1971, defendant sought to obtain from NHLS an exclusive license to make embroidered emblems representing the team motifs. Although these negotiations were unsuccessful, defendant went ahead and manufactured and sold without authorization emblems which were substantial duplications of the marks. During the month of April 1972, defendant sold approximately 24,603 of these emblems to sporting goods stores in various states. Defendant deliberately reproduced plaintiffs' marks on embroidered emblems and intended the consuming public to recognize the emblems as the symbols of the various hockey teams and to purchase them as such.

### The Law

The complaint alleged that defendant's manufacture and sale of the team symbols constitutes (1) an infringement of the plaintiffs' registered marks in violation of 15 U.S.C.A. § 1114;[2] (2) false designation of origin in violation of 15 U.S.C.A. § 1125;[3] and (3) common law unfair competition.

The statutory cause of action emanates from what is commonly called the Lanham Act. 15 U.S.C.A. § 1051 et seq. The Lanham Act defines a service mark as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others" and a trademark as "any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C.A. § 1127. Service mark infringement and trademark infringement are governed by identical standards. The terms can be used interchangeably when the marks are both service marks and trademarks. For convenience we use the word trademark in this opinion to designate both service mark and trademark use of the symbols involved.

A cause of action for the infringement of a registered mark in violation of 15 U.S.C.A. § 1114 exists where a person uses (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confu-

---

**2.** 15 U.S.C.A. § 1114 reads in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

. . . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

**3.** 15 U.S.C.A. § 1125 reads in pertinent part:

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, . . . shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

sion, or to cause mistake or to deceive. A broadening of the protection afforded by the statute occurred by amendment in 1962 which deleted the previously existing requirement that the confusion or deception must relate to the "source of origin of such goods or service." Pub.L. 87–772, § 17, 76 Stat. 773 (1962). Continental Motors Corp. v. Continental Aviation Corp., 375 F.2d 857, 860 at n. 8 (5th Cir. 1967).

While this Court has rejected the view that the Lanham Act brought all claims of unfair competition in interstate commerce within the federal question jurisdiction of the federal courts, Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc., 240 F.2d 814 (5th Cir. 1957), this Court has recognized that 15 U.S.C.A. § 1125 creates a federal cause of action for false representation of goods or services in commerce. American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3 (5th Cir. 1974); Alum-A-Fold Shutter Corp. v. Folding Shutter Corp., 441 F.2d 556 (5th Cir. 1971). The statute is broadly worded and proscribes not only "a false designation of origin" but also the use of "any false description or representation, including words or other symbols tending falsely to describe or represent . . . goods or services" in commerce. The use of an unregistered trademark can constitute a violation of § 1125 where

> . . . the alleged unregistered trademarks used by the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a representation that its goods come from the same source.

Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144, 147 (2nd Cir. 1956). See Sutton Cosmetics, Inc. v. Lander Co., 455 F.2d 285 (2nd Cir. 1972); Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963); State of Florida v. Real Juices, Inc., 330 F.Supp. 428 (M.D.Fla.1971); Scarves by Vera, Inc. v. United Merchants & Manufacturers, Inc., 173 F.Supp. 625 (S.D.N.Y. 1959). See also Hesmer Foods, Inc. v.

Campbell Soup Co., 346 F.2d 356 (7th Cir. 1965). See generally I. R. Callman, Unfair Competition, Trademarks and Monopolies § 18.2(b) (1967). Under § 1125, the registration of a mark is not a prerequisite of recovery as it is under § 1114.

Unfair competition is a broader area of the law than statutory trademark infringement. B. H. Bunn Co. v. AAA Replacement Parts Co., 451 F.2d 1254 (5th Cir. 1971). Unfair competition is almost universally regarded as a question of whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers. Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474, 478 (5th Cir. 1974). As stated in American-Marietta Co. v. Krigsman, 275 F.2d 287 (2nd Cir. 1960),

> The whole basis of the law of "unfair competition" . . . is that no one shall sell his goods in such a way as to make it appear that they come from some other source. The simplest form of this is to use the name or trademark of another, but the law goes further than that.

275 F.2d at 289. As a general rule, therefore, the same facts which would support an action for trademark infringement would also support an action for unfair competition.

### The Case

The difficulty with this case stems from the fact that a reproduction of the trademark itself is being sold, unattached to any other goods or services. The statutory and case law of trademarks is oriented toward the use of such marks to sell something other than the mark itself. The district court thought that to give plaintiffs protection in this case would be tantamount to the creation of a copyright monopoly for designs that were not copyrighted. The copyright laws are based on an entirely different concept than the trademark laws, and contemplate that the copyrighted

material, like patented ideas, will eventually pass into the public domain. The trademark laws are based on the needed protection of the public and business interests and there is no reason why trademarks should ever pass into the public domain by the mere passage of time.

Although our decision here may slightly tilt the trademark laws from the purpose of protecting the public to the protection of the business interests of plaintiffs, we think that the two become so intermeshed when viewed against the backdrop of the common law of unfair competition that both the public and plaintiffs are better served by granting the relief sought by plaintiffs.

■ Underlying our decision are three persuasive points. *First,* the major commercial value of the emblems is derived from the efforts of plaintiffs. *Second,* defendant sought and ostensibly would have asserted, if obtained, an exclusive right to make and sell the emblems. *Third,* the sale of a reproduction of the trademark itself on an emblem is an accepted use of such team symbols in connection with the type of activity in which the business of professional sports is engaged. We need not deal here with the concept of whether every artistic reproduction of the symbol would infringe upon plaintiffs' rights. We restrict ourselves to the emblems sold principally through sporting goods stores for informal use by the public in connection with sports activities and to show public allegiance to or identification with the teams themselves.

*As to 15 U.S.C.A. § 1114.*

Plaintiffs indisputably have established the first three elements of a § 1114 cause of action. Plaintiffs' marks are validly registered and defendant manufactured and sold emblems which were (1) substantial duplications of the marks, (2) without plaintiffs' consent, and (3) in interstate commerce. The issue is whether plaintiffs have proven elements four and five of an action for mark infringement under the Lanham Act, i. e., whether the symbols are used in connection with the sale of goods and whether such use is likely to cause confusion, mistake or deception.

■ The fourth requisite of a § 1114 cause of action is that the infringing use of the registered mark must be in connection with the sale, offering for sale, distribution or advertising of any goods. Although the district court did not expressly find that plaintiffs had failed to establish element four, such a finding was implicit in the court's statement that "in the instant case, the registered trade mark is, in effect, the product itself."

■ Defendant is in the business of manufacturing and marketing emblems for wearing apparel. These emblems are the products, or goods, which defendant sells. When defendant causes plaintiffs' marks to be embroidered upon emblems which it later markets, defendant uses those marks in connection with the sale of goods as surely as if defendant had embroidered the marks upon knit caps. *See* Boston Professional Hockey Association, Inc. v. Reliable Knitting Works, Inc., 178 USPQ 274 (E.D.Wis.1973). The fact that the symbol covers the entire face of defendant's product does not alter the fact that the trademark symbol is used in connection with the sale of the product. The sports fan in his local sporting goods store purchases defendant's fabric and thread emblems because they are embroidered with the symbols of ice hockey teams. Were defendant to embroider the same fabric with the same thread in other designs, the resulting products would still be emblems for wearing apparel but they would not give trademark identification to the customer. The conclusion is inescapable that, without plaintiffs' marks, defendant would not have a market for his particular product among ice hockey fans desiring to purchase emblems embroidered with the symbols of their favorite teams. It becomes clear that defendant's use of plaintiffs' marks is in connection with the sale, offering for sale, distribution, or advertising of goods and that plain-

tiffs have established the fourth element of a § 1114 cause of action.

 The fifth element of a cause of action for mark infringement under 15 U.S.C.A. § 1114 is that the infringing use is likely to cause confusion, or to cause mistake or to deceive. The district court decided that there was no likelihood of confusion because the usual purchaser, a sports fan in his local sporting goods store, would not be likely to think that defendant's emblems were manufactured by or had some connection with plaintiffs. *Cf.* Sun-Maid Raisin Growers of California v. Sunaid Food Products, Inc., 356 F.2d 467 (5th Cir. 1966). This court has held that the findings of a district court as to likelihood of confusion are factual and not to be overturned unless clearly erroneous. Hang Ten International v. Sherry Manufacturing Co., 498 F.2d 326 (5th Cir. 1974); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (5th Cir. 1963). In this case, however, the district court overlooked the fact that the act was amended to eliminate the source of origin as being the only focal point of confusion. The confusion question here is conceptually difficult. It can be said that the public buyer *knew* that the emblems portrayed the teams' symbols. Thus, it can be argued, the buyer is not confused or deceived. This argument misplaces the purpose of the confusion requirement. The confusion or deceit requirement is met by the fact that the defendant duplicated the protected trademarks and sold them to the public knowing that the public would identify them as being the teams' trademarks. The certain knowledge of the buyer that the source and origin of the trademark symbols were in plaintiffs satisfies the requirement of the act. The argument that confusion must be as to the source of the manufacture of the emblem itself is unpersuasive, where the trademark, originated by the team, is the triggering mechanism for the sale of the emblem.

The plaintiffs, with the exception of Toronto, have satisfied all elements of a cause of action for mark infringement in violation of 15 U.S.C.A. § 1114. Plaintiffs are entitled to an injunction permanently enjoining defendant from the manufacture and sale, in interstate commerce, of emblems embroidered with substantial duplications of plaintiffs' marks without plaintiffs' consent, and such other relief as might flow from the facts.

*As to 15 U.S.C.A. § 1125.*

 The district court held that plaintiffs failed to prove a cause of action under 15 U.S.C.A. § 1125 for false designation of origin of the goods in question or for false description by means of symbols. Because all plaintiffs, with the exception of Toronto, have established a cause of action for registered mark infringement, the district court's decision in regard to a § 1125 cause of action only affects plaintiff Toronto. The district court based its denial of a § 1125 cause of action on two findings of fact: (1) there was no likelihood of confusion as to the source of the emblems and (2) defendant did not make any false representations concerning the origin of the emblems. Our decision that confusion is self-evident from the nature of defendant's use of plaintiffs' marks applies with equal force in plaintiff Toronto's case. We reverse.

On appeal, defendant does not contest that the facts establish the use necessary to give Toronto service mark protection. Defendant simply argues that the mere imitation of a product cannot constitute a false designation of origin or a false representation concerning goods in commerce under § 1125.

 In the case *sub judice,* defendant did not merely copy a product of the Toronto team. Defendant reproduced Toronto's common law mark on embroidered emblems with the intent that the public recognize and purchase the emblems as the symbol of the Toronto team. In the language of § 1125, defendant used a symbol, Toronto's mark, which tended falsely to represent goods, the embroidered emblems, in commerce. Where the consuming public had the certain knowledge that the source and ori-

gin of the trademark symbol was in the Toronto team, the reproduction of that symbol by defendant constituted a violation of § 1125.

■ To warrant injunctive relief under § 1125, a plaintiff must demonstrate that the false representations have a tendency to deceive the consumer. Geisel v. Poynter Products, Inc., 283 F.Supp. 261 (S.D.N.Y.1968). Our decision that defendant's use of plaintiffs' marks entails a likelihood of confusion under § 1114 establishes that defendant's identical use of Toronto's mark constitutes a false representation under § 1125. See Girl Scouts v. Personality Posters Mfg. Co., 304 F.Supp. 1228 (S.D.N.Y.1969). Accordingly, we reverse the decision of the district court and hold that Toronto has · established a cause of action under 15 U.S.C.A. § 1125.

### As to Unfair Competition.

■ Although the district court denied plaintiffs relief under the applicable provisions of the Lanham Act, the court found that the actions of defendant constituted unfair competition. The court stated that defendant's use of plaintiffs' marks had ". . . the prospect of trading on the competitive advantage the mark originator has to the public which desires the 'official' product." Unfair competition is a question of fact, Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474 (5th Cir. 1974). Our review is narrowly circumscribed by F.R.Civ.P. 52(a). We find that there is substantial evidence which reflects that defendant competed unfairly with plaintiffs and, accordingly, we affirm the decision of the district court in this regard.

■ The unfair competition cannot, however, be rendered fair by the disclaimer ordered by the district court. The exact duplication of the symbol and the sale as the team's emblem satisfying the confusion requirement of the law, words which indicate it was not authorized by the trademark owner are insufficient to remedy the illegal confusion. Only a prohibition of the unauthorized use will sufficiently remedy the wrong.

### Additional Defenses to Relief

Defendant makes two arguments against an extension of Lanham Act protection to plaintiffs which need consideration. Adopting the district court's rationale, defendant asserts first, that plaintiffs' marks when embroidered on emblems for wearing apparel are functional and, thus, serve no trademark purpose and, second, that there is some overriding concept of free competition which, under the instant facts, would remove plaintiffs from the protective ambits of the Lanham Act.

■ The short answer to defendant's arguments is that the emblems sold because they bore the identifiable trademarks of plaintiffs. This fact clearly distinguishes the case from Pagliero v. Wallace China Co., 198 F.2d 339 (9th Cir. 1952), relied upon by the district court. Pagliero involved designs on chinaware which were neither trademarked, patented nor copyrighted. The court found no unfair competition on the ground that the designs were functional, that is, they connoted other than a trademark purpose. "The attractiveness and eye-appeal of the design sells the china," 198 F.2d at pp. 343–344, not the trademark character of the designs. In the case at bar, the embroidered symbols are sold not because of any such aesthetic characteristic but because they are the trademarks of the hockey teams. Those cases which involved utilitarian articles such as pole lamps, Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), fluorescent lighting fixtures, Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964)· and toggle clamps, West Point Mfg. Co. v. Detroit Stamping Co., 222 F.2d 581 (6th Cir. 1955), all involved products which had a consumer demand regardless of their source or origin. The principles involved in those cases are not applicable to a trademark symbol case where the design or symbol has no demonstrated value other than its significance as the trademark of a hockey team.

■ The argument that the symbols could be protected only if copyright- ·

ed likewise misses the thrust of trademark protection. A trademark is a property right which is acquired by use. Trade-Mark Cases, 100 U.S. 82 (1879). It differs substantially from a copyright, in both its legal genesis and its scope of federal protection. The legal cornerstone for the protection of copyrights is Article I, section 8, clause 8 of the Constitution. In the case of a copyright, an individual creates a unique design and, because the Constitutional fathers saw fit to encourage creativity, he can secure a copyright for his creation for a period of 28 years, renewable once. After the expiration of the copyright, his creation becomes part of the public domain. In the case of a trademark, however, the process is reversed. An individual selects a word or design that might otherwise be in the public domain to represent his business or product. If that word or design comes to symbolize his product or business in the public mind, the individual acquires a property right in the mark. The acquisition of such a right through use represents the passage of a word or design out of the public domain into the protective ambits of trademark law. Under the provisions of the Lanham Act, the owner of a mark acquires a protectable property interest in his mark through registration and use.

■ The time limit on copyright protection not being sufficient for plaintiffs' purposes, they acquainted the public with their marks and thereby created a demand for those marks. Through extensive use, plaintiffs have acquired a property right in their marks which extends to the reproduction and sale of those marks as embroidered patches for wearing apparel. What plaintiffs have acquired by use, the substantive law of trademarks as it is embodied in the Lanham Act will protect against infringement. There is no overriding policy of free competition which would remove plaintiffs, under the facts of this case, from the protective ambits of the Lanham Act.

Defendant argues to us that the district court decision can be sustained on an alleged antitrust defense. The district court considered the antitrust defense solely in connection with plaintiffs' unfair competition claim and held that defendant had failed to prove that plaintiffs had used their marks in violation of the antitrust laws. Accordingly, the district court drew an order striking defendant's antitrust defense, at least insofar as defendant asserted the defense against the unfair competition action. The district court did not reach this defense in connection with the Lanham Act claim, and neither do we. There has been no cross-appeal from the order of the district court striking the defense as asserted against the unfair competition cause of action, and since we affirm the finding of unfair competition and direct only a change in the relief that should have been provided, as to that cause of action the matter is evidently not still open for litigation. Nevertheless, we leave these matters for the district court to unravel on a remand of this case for such further proceedings as are consistent with this opinion.

Reversed and remanded.