The SUPREME ASSEMBLY, ORDER OF RAINBOW FOR GIRLS, and Stange Company, Inc., Plaintiffs-Appellants,

v.

J. H. RAY JEWELRY COMPANY, Defendant-Appellee.

No. 81–1281.

United States Court of Appeals, Fifth Circuit.

May 28, 1982.

Thomas L. Cantrell, Dallas, Tex., John D. Pope, III, St. Louis, Mo., for plaintiffs-appellants.

Weinberg, Sandoloski & McManus, Sandy M. Sandoloski, Dallas, Tex., for defendant-appellee.

Before THORNBERRY, REAVLEY and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This is an appeal of a judgment in favor of J. H. Ray Jewelry Company in an action brought by The Supreme Assembly, Order of Rainbow for Girls, and Stange Company, Inc., alleging trademark infringement, false designation of origin and unfair competition in Ray's sale of jewelry bearing the registered collective mark of the Rainbow Order, which jewelry was not manufactured by Stange, the "official jeweler" of the Rainbow Order. The district court found no "likelihood of confusion," within the meaning of the relevant statutes, from Ray's sale of the non-Stange Rainbow jewelry. Having determined that this finding was not clearly erroneous, we affirm the district court's judgment.

## I. Statement of Facts.

The Supreme Assembly, Order of Rainbow for Girls (Rainbow) is a fraternal organization incorporated in Oklahoma, having as members girls between the ages of 12 and 20 whose families have Masonic connections. It is divided organizationally into several Grand Assemblies, one of which is the Grand Assembly of Texas. In 1930, Rainbow adopted an emblem (the Rainbow mark) consisting of a representation of clasping hands, on top of which sits a triangle enclosing the letter "R". Over the hands and the triangle is a rainbow containing the letters "B", "F", "C" and "L". This emblem was registered by Rainbow in 1962 with the United States Patent Office as a "collective membership mark,"[1] No. 736,-173.

1. "The term 'collective mark' means a trade-   mark or service mark used by the members of

Stange Company, Inc. (Stange) is a Missouri corporation which, according to Rainbow, has been Rainbow's "official jeweler" since 1930, a relationship confirmed in a 1973 agreement. Under the agreement, Stange was licensed to manufacture jewelry bearing the Rainbow mark described above (Rainbow jewelry) and Rainbow agreed to purchase its jewelry requirements from Stange.[2] In exchange, Rainbow is given price discounts (also referred to at trial as royalties) on merchandise Stange sells to Rainbow. Stange also guarantees, under the agreement, the quality of material and workmanship of the merchandise it sells Rainbow. Stange manufactured jewelry is identified by Stange's own trademark, the letter "S".

Rainbow jewelry includes a wide array of items, primarily pins, charms, medals and rings, bearing the Rainbow mark, which indicate membership or special status within the Rainbow Order. It is distributed in several ways. Rainbow purchases some Rainbow jewelry from Stange for its own distribution and sale. Rainbow also markets Rainbow jewelry at the annual meetings of its General Assemblies. In addition to selling Rainbow jewelry to and through the Rainbow organization, Stange markets most of its Rainbow jewelry, with the exception of those items which Rainbow requires to be earned, directly to or for members through direct mail sales and through retail jewelers. In regard to the approximately two hundred retail jewelers who carry Rainbow jewelry, no evidence was submitted as to how many sell Stange manufactured Rainbow jewelry and how many sell Rainbow jewelry all or some of which is obtained elsewhere, although Ray did submit testimony that it receives at least thirty to thirty-five catalogs a year offering Rainbow jewelry along with the jewelry of other fraternal associations.

J. H. Ray Jewelry Co. (Ray) is a sole proprietorship doing business in Dallas, Texas. From 1952 to 1977, Ray was authorized to display and to sell Rainbow jewelry at the annual meetings of the Grand Assembly of Texas. In addition, Ray sold Rainbow jewelry from its retail jewelry store in Dallas. In 1977, Ray was informed by the Grand Assembly of Texas that it would no longer be permitted to sell jewelry at the annual meetings. While discontinuing its sales at the annual meetings, Ray continued to sell Rainbow jewelry at its retail store. Ray did not manufacture Rainbow jewelry, but instead purchased it from Stange and, "for the past 15 to 18 years," from manufacturers other than Stange. Ray discontinued its purchases of Stange manufactured jewelry in 1977, although it still had a substantial inventory of that jewelry. In 1980, Stange requested that Ray discontinue selling items bearing the Rainbow mark which were not secured from Stange. Ray refused to honor that request and Stange and Rainbow brought this action against Ray.

## II. Proceedings Below.

Stange and Rainbow alleged in their complaint that, despite their attempts to secure discontinuance of Ray's use of the Rainbow mark, Ray sold items bearing the mark, thus creating confusion and mistake, and the likelihood of confusion and mistake, among purchasers as to the source of origin or responsibility for Ray's goods and thus causing Ray's goods to be passed off as a product from Stange or a product sponsored by Rainbow. In this way they contended that Ray had competed unfairly with them and infringed Rainbow's trademark rights.

a cooperative, an association or other collective group or organization and includes marks used to indicate membership in a union, an association or other organization." 15 U.S.C. § 1127.

15 U.S.C. § 1054 provides:

Subject to the provisions relating to the registration of trademarks, so far as they are applicable, collective and certification marks . . . shall be registrable under this chapter, in the same manner and with the same effect as are trademarks, . . . and when registered they shall be entitled to the protection provided in this chapter in the case of trademarks. . . .

2. In addition, the agreement gave Stange the right to sue for infringement of the Rainbow mark and to name Rainbow as a party plaintiff in any such action.

Stange and Rainbow sought injunctive relief, actual and punitive damages and attorneys' fees. Jurisdiction was predicated on 15 U.S.C. § 1121 and 28 U.S.C. § 1338, as well as 28 U.S.C. § 1332. The district court, in a bench trial, entered judgment in favor of Ray.

### III. Trademark Infringement.

■ This case involves a simple failure of proof. Lawsuits for infringement of a registered trademark are governed by Lanham Act § 32(1), 15 U.S.C. § 1114(1). *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980). Section 1114(1) provides, in pertinent part:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is *likely to cause confusion, or to cause mistake, or to deceive*; ...

. . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

The standard established by the provision emphasized above is referred to as "likelihood of confusion" and is the key element in an action for trademark infringement. "When there is no likelihood of confusion, there can be no trademark infringement."

*Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association*, 651 F.2d 311, 319 (5th Cir. 1981). As stated in *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388 (5th Cir. 1977):

Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product's source, its endorsement by the plaintiff, or its connection with the plaintiff.[3]

■ The district court found that Stange and Rainbow had failed to adduce evidence justifying an inference of likelihood of confusion as to origin, approval, endorsement or other association. This court has stated numerous times that the presence of a likelihood of confusion is a question of fact and that a district court's finding on this issue can, therefore, be set aside only if clearly erroneous.[4] *See, e.g., Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir. 1981); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979). *See also* Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

3. Prior to 1962, § 1114(1) provided that the use of the mark must be "likely to cause confusion, or to cause mistake, or to deceive purchasers as to the source or origin of such goods or services." (Emphasis added.) In 1962, it was amended to delete the underlined portion. Pub.L. 87–772, § 17, 76 Stat. 773 (1962). Although this amendment "clearly broadened the protection accorded by the statute," *Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975), it is equally clear that this amendment did not delete the confusion requirement entirely and that a claimant must still prove a likelihood of confusion, mistake or deceit of "typical" purchasers, or potential purchasers, as to the connection of the trademark owner with the infringing product, *see, e.g.,*

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 388 (5th Cir. 1977).

4. Where the trial court does not apply governing legal standards in making its findings, however, the "clearly erroneous" standard is inapplicable. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703 (5th Cir. 1981); *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 384 (5th Cir. 1977). *See also B.H. Bunn v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1262–63 (5th Cir. 1971) ("[A] court must have a sufficient number of probative digits of unfairly competitive acts, or it cannot total to unfair competition as a matter of law.")

In this case, we are not left with such a conviction.

In this case, Appellants simply failed to prove that there was any likelihood of confusion. The district court noted two facts which support the finding that there was no likelihood of confusion from Ray's sale of non-Stange Rainbow jewelry and which distinguish this case from *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 510 F.2d 1004 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975) (*Boston Hockey*). First, the district court found, on the basis of the evidence presented, that there is no historical custom or practice—either as to fraternal jewelry or Rainbow jewelry—that would provide a reasonable basis for buyers of Rainbow jewelry to assume that such jewelry can only be manufactured with Rainbow's sponsorship or approval. The district court noted evidence that most fraternal associations exercise little control over the manufacture of jewelry bearing their fraternal emblems and that until recently Rainbow's policy toward unauthorized Rainbow jewelry was similar to that of most fraternal associations. Second, the

district court found that Stange's status as Rainbow's "official jeweler" is well advertised, and that this advertising combined with the use of Stange's own distinctive trademark, the letter "S", on Stange manufactured Rainbow jewelry, created the inescapable inference for purchasers that all other Rainbow jewelry is not endorsed, sponsored, approved or otherwise associated with Rainbow.[5]

▆ Appellants make several arguments in support of their position that the district court erred in finding no likelihood of confusion. First, they contend that the evidence shows that the emblem is used on a wide variety of goods in a trademark sense. As the district court pointed out, however, there was no evidence that the emblem was being used on other products as a traditional trademark and therefore no basis for consumers to assume that the emblem operated as a trademark on the products in question. Because of the court's determinations of fact that the historical nature of the fraternal jewelry industry in general, and Rainbow jewelry in particular,

---

**5.** In addition to finding that Appellants failed to prove the necessary likelihood of confusion, the district court found that Appellants had failed to prove that the Rainbow emblem operates as a trademark when used as a design for jewelry. Ray had defended not only on the ground that its sale of non-Stange manufactured Rainbow jewelry caused no likelihood of confusion, but also on the ground that the Rainbow emblem, when sold as jewelry, served a functional purpose and thus does not operate as a trademark. The "doctrine of functionality" developed in the common law of unfair competition. See Note, *Unfair Competition and the Doctrine of Functionality*, 64 Colum.L.Rev. 544 (1964). It has been "variously articulated and applied by those courts which have had occasion to consider it." *Keene Corp. v. Paraflex Indus. Inc.*, 653 F.2d 822 (3rd Cir. 1981). In particular, here, *compare Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 389 (5th Cir. 1977), *with Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). While "functionality" has been defined in numerous ways, the attempt is basically to distinguish between design features of a product which serve a useful purpose in the functioning of the product and those which are

merely arbitrary. "In effect, the courts have allowed the public interest in being able to purchase competing articles with the same useful features to override the producer's right to protect the goodwill its product has generated." Litman, *The Problem of Functional Features: Trade Dress Infringement Under Section 43(a) of the Lanham Act*, 82 Colum.L.Rev. 77, 80 n.27 (1982). The district court noted that "[l]ikelihood of confusion and functional purpose, while separate doctrines, are related to the extent that the more functional a feature is, the less likely it is that buyers will view it as unique or a distinctive symbol of origin," citing McCarthy, *Trademarks and Unfair Competition* § 7.26 (1973). In another case involving the sale of jewelry bearing the emblem of a fraternal association, the Ninth Circuit relied heavily on the distinction between trademarks and functional features in deciding that there was no likelihood of confusion. *See International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980), cert. denied, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). We need not address the meaning and application of the doctrine in this case because of our determination that the district court's finding of no likelihood of confusion is not clearly erroneous nor based on a misapplication of the governing legal standards.

was characterized by an absence of connection between items bearing the mark of the fraternal association and the fraternal association itself and that "official" Rainbow jewelry was identified not by the Rainbow mark but by the Stange mark, it was justified in concluding that consumers were not likely to be confused by the presence of the Rainbow emblem on non-Stange Rainbow jewelry sold by Ray.[6] Second, Appellants point to the following stipulated facts:

(i) The purchasing public has come to recognize the registered mark of Plaintiff, RAINBOW as identifying membership in said organization.

(ii) Defendant has sold, is selling, and intends to continue to sell goods comprising or bearing a reproduction of a copy of the registered mark of Plaintiff, RAINBOW which goods were not sponsored or sold by Plaintiff, RAINBOW.

(iii) Purchasers of goods comprising or bearing a reproduction, copy or colorable imitation of Plaintiff, RAINBOW's registered mark purchase what they purchase as a direct result of the presence of the mark on the goods purchased.

(iv) Defendant has duplicated the registered mark of Plaintiff, RAINBOW and sold items bearing it to the purchasing public knowing the purchasers would identify such items with the Plaintiff, RAINBOW.

We do not believe, as argued by Appellants, that these facts require a finding of trademark infringement. The fact that purchasers purchased Rainbow jewelry as a direct result of the presence of the Rainbow emblem does not compel the conclusion that they did so believing that the jewelry was in any way endorsed, sponsored, approved or otherwise associated with Rainbow, given the court's findings. The evidence supported the conclusion that they purchased the items bearing the Rainbow mark for the value of items bearing the Rainbow mark themselves, to show membership and status within the organization, and not because of any confusion, mistake or deceit as to the association of the items themselves with Rainbow as a result of the presence of the mark.[7] Third, Appellants point to the fact that Ray used the same catalog for both Stange and non-Stange manufactured jewelry sales. Included in the representations made in the catalog, however, is the statement: "The [S] stamped on the back of each emblem designates the emblem is official." In addition, as noted by the district court, there was "no evidence that any of the pieces pictured in the catalog are non-Stange jewelry, or that any buyer of Rainbow jewelry was misled by the catalog into believing that she was purchasing 'official' Rainbow jewelry when she was not." Ray's catalog added no proof, therefore, of a likelihood of confusion in Ray's sale of non-Stange manufactured jewelry. Finally, Appellants argue that the nature of the buying public further highlights the presence of a likelihood of confusion. They rely on the testimony of an adult official of the Dallas Rainbow Order, who had purchased Rainbow jewelry for several years, that she did not know the difference between Stange and non-Stange jewelry or between Ray as a vendor endorsed by Rainbow and Ray as a mere jeweler selling Rainbow jewelry. As Ray points out, however, she never stated that she was confused as to the origin or sponsorship of any Rainbow jewelry or that because it bore the collective membership mark of Rainbow she believed it was sponsored by or originated from

---

**6.** See note 5 *supra*.

**7.** Admittedly some of these stipulations seem very close to the language in *Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). This court in *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 (5th Cir. 1977), however, declined to adopt a reading of *Boston Hockey*

which would dispose of the confusion issue merely on a showing that buyers knew of the source and origin of the trademark symbol, as opposed to the product. It is not enough that typical buyers purchase the items because of the presence of the mark; it must be shown that they would purchase the items because the presence of the mark indicates to them the necessary connection between the items themselves and the owner of the mark.

Rainbow. What her testimony indicated was that she simply did not care about the connection of the Rainbow jewelry with the Rainbow Order, but merely desired jewelry bearing the Rainbow mark. We do not believe that the evidence relied on by Appellants shows that the finding of the district court as to likelihood of confusion was clearly erroneous, particularly in light of the evidence as to the nature of the market and the use of Stange's own trademark to identify "official" Rainbow jewelry.

In *Boston Hockey, supra,* we held that Dallas Cap had infringed Boston Hockey's trademark rights by selling embroidered patches bearing the hockey team's symbol. Acknowledging, in reference to the *Boston Hockey* decision, that "[i]t is not unreasonable to conclude, given the degree to which sports emblems are used to advertise teams and endorse products, that a consumer seeing the emblem or name of a team on or associated with a good or service would assume some sort of sponsorship or association between the product's seller and the team," the district court in this case found that "[t]he practice with respect to fraternal emblems, and, in particular, fraternal jewelry is markedly different." That finding is supported by the evidence. In *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.,* 549 F.2d 368 (5th Cir. 1977), we explained that *Boston Hockey* does not always equate knowledge of a symbol's source with confusion sufficient to establish trademark infringement and we treated as a fact question the question whether in a given case knowledge of the source of the *symbol* supports the inference that many of the product's typical purchasers would believe that the *product itself* originated with or was somehow endorsed by the owner of the mark. 549 F.2d at 389. "Our cases demonstrate unbroken insistence upon likelihood of confusion, and by doing so they reject any notion that a trademark is an owner's 'property' to be protected irrespective of its role in the operation of our markets." *Id.*[8] Here, the district court found as a matter of fact that the role of Rainbow's emblem on the jewelry was not such that the actions of Ray caused a likelihood of confusion and therefore properly held that there had been no trademark infringement.

## IV. False Designation of Origin.

In addition to alleging trademark infringement, Appellants urged in their post-trial argument that the evidence proved that Ray had falsely designated the origin of its goods.[9] They contended that Ray's Rainbow catalog falsely represented that all Rainbow jewelry sold by Ray is official Rainbow jewelry. In fact, this claim would more appropriately be labeled one for false representation, also governed by 15 U.S.C. § 1125(a), rather than false designation of origin. *See Chevron Chemical Corp. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695 (5th Cir. 1981). The district court rejected Appellants' claim that the evidence established false designation of origin for three reasons: (1) this argument was not properly before the court because until several days after the trial

8. In *Boston Hockey,* this court reversed the district court's finding of no likelihood of confusion, but it did so on the basis of its conclusion that the district court had misapplied the governing legal standard and in the absence of a district court finding of fact that purchasers did not have a basis for connecting the marked items with the owner of the mark.

9. Lanham Act § 43(a), 15 U.S.C. § 1125(a), provides:
Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Appellants had not advanced the argument of affirmative misrepresentation; (2) the evidence did not show a likelihood of confusion concerning the origin of the jewelry; and (3) the evidence did not show any affirmative misrepresentation. The likelihood of confusion test discussed above has been held equally applicable to claims of false representation, as it has to every type of unfair competition. *Id.* at 703. The catalog, which has not been printed for several years nor distributed since 1980, clearly states that all "official" Rainbow jewelry is stamped with Stange's trademark. In addition, the district court found "no evidence that any of the pieces pictured in the catalog are non-Stange jewelry, or that any buyer of Rainbow jewelry was misled by the catalog into believing that she was purchasing 'official' Rainbow jewelry when she was not." Even assuming that the issue was properly before the court, therefore, the evidence did not support a finding of false representation under 15 U.S.C. § 1125(a).

## V. Unfair Competition.

■ Appellants also contend that the same evidence that gave rise to its complaints about trademark infringement and false designation of origin fully supports a finding of unfair competition. Unfair competition is a broad category of which trademark infringement is one aspect. "[B]oth turn primarily on the likelihood of customer confusion." [10] *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 386 (5th Cir. 1977). The district court, noting that the sole theory of unfair competition alleged by Appellants was the sale of jewelry bearing the Rainbow emblem, found for Ray on the basis of its

findings with respect to the claim of trademark infringement.[11] We do the same.

AFFIRMED.

---

10. Appellants have not questioned the applicability of the "likelihood of confusion" test to their unfair competition claim, stating their position on appeal as simply that the same evidence that gave rise to their other claims fully supports a finding of unfair competition. Whether the applicable law is federal common law or Texas law, presumably the governing state law to the extent state law governs, the "likelihood of confusion" test applies. *See*

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 382 n.14 (5th Cir. 1977); *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 706 (5th Cir. 1981).

11. The district court also found that, even assuming that the claim that Ray's Rainbow catalog was deceptive was properly before the court, there was no evidence of deception.