The NUTRASWEET COMPANY; Monsanto Corporation, Plaintiffs,

v.

The VENROD CORPORATION; Nutribest Corp., Defendants.

Civil No. 96–2377(JAF).

United States District Court, D. Puerto Rico.

Sept. 30, 1997.

Alejandro J. Cacho, Reichard, Calaf & Walker, San Juan, PR, (Stephen P. Durchslag, Winston & Strawn, Chicago, IL, of counsel), for plaintiffs.

Eugenio C. Romero, San Juan, PR, for defendants.

### *OPINION AND ORDER*

FUSTE, District Judge.

In this case, the NutraSweet Company, a division of the Monsanto Company, sues the Nutribest Corporation, a wholly-owned subsidiary of Venrod Corporation, for trademark infringement and related causes of action. Defendants move for dismissal or summary judgment.

## I.

### *Facts*

Plaintiffs developed and held the sole proprietorship of aspartame, a sugar substitute, from 1981 to December 1992, which they have identified with the brand "NutraSweet", used to sweeten numerous products without sugar. The only tabletop form of NutraSweet is a product called Equal. The defendants requested to purchase aspartame from NutraSweet but was denied until the end of the sole proprietorship. Subsequently, Nutribest began producing Same, an aspartame-containing tabletop sweetener marketed as a low-cost alternative to Equal, despite requests by NutraSweet that it refrain from using the name "Same" for the sweetener. Same has achieved an impressive level of sales that nearly rival those of Equal in Puerto Rico.

## II.

### *Legal Standards*

**A.** *Conversion of a Motion to Dismiss to a Motion for Summary Judgment*

When a court considers matters outside the pleadings in deciding a motion to dismiss pursuant to Rule 12(b), the court must treat the motion as one for summary judgment. *Cooperativa de Ahorro y Crédito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269, 272 (1st Cir.1993), *cert. denied*, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995); *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir.1992). In general, when treating a Rule 12(b) motion as a motion for summary judgment, the court must notify all parties about the conversion, in order to give them a reasonable opportunity to present all material pertinent to this type of motion. Fed.R.Civ.P. 12(b) and (c); *Chaparro–Febus v. International Longshoremen Ass'n, Local 1575*, 983 F.2d 325, 331 (1st Cir.1992).

However, this court finds no need to mechanically enforce the requirement of express notice. *Id.* A district court does not have to give express notice when the opposing party has received movant's motion and materials and has had a reasonable opportu-

nity to respond to them. *Id., citing, Moody v. Town of Weymouth,* 805 F.2d 30, 31 (1st Cir.1986). In the present case, both parties have provided extensive materials in addition to their arguments and should have, thus, become aware that the motion would be considered as one for summary judgment. We convert defendants' Fed.R.Civ.P. 12(b) motion into a summary judgment motion because we have precisely considered the extraneous material appended by the parties.

### B. *Summary Judgment Standard*

The familiar purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 257, 106 S.Ct. 2505, 2510, 2514–15, 91 L.Ed.2d 202 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), and courts "must view the eviden-

tiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor." *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990).

### C. *Trademark Infringement*

The Lanham Act determined that trademarks may not be reproduced, counterfeited, copied or colorably imitated where such use is likely to deceive or cause confusion or mistake. 15 U.S.C. §§ 1051–1127 (1994). The First Circuit laid out eight factors that determine whether there has been confusion between the goods in *Boston Athletic v. Sullivan,* 867 F.2d 22, 29 (1st Cir.1989) We now summarize those factors.

First, the similarity of the marks must be considered, incorporating a view of the total effect of the designation, rather than a comparison of individual features. *Id., citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487 (1st Cir. 1981). When one uses a mark similar to one already in use, there is an affirmative duty to avoid the likelihood of confusion. *Boston Athletic Ass'n,* 867 F.2d at 29, *citing, Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 817–18 (1st Cir.1987). In the *Boston Athletic Ass'n* case, the district court's granting of summary judgment was overturned because they regarded similarity as requiring exactness. As the Circuit noted, however, "the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Boston Athletic Ass'n,* 867 F.2d at 30, *quoting, Baker v. Master Printers Union of New Jersey,* 34 F.Supp. 808, 811 (D.N.J.1940). The second criterion to be considered is the similarity of the goods. Aspects of similarity include quality and usability. *Boston Athletic Ass'n,* 867 F.2d at 30.

The third criterion is relationship between the parties' channel of trade. *Id.* The fourth criterion is the relationship between the parties, advertising. *Id.* The fifth criterion is the classes of prospective purchasers. *Id.* at 30–31. The First Circuit has often treated these three factors together. Advertising di-

rected at the same public through the same media evinces an attempt at confusing that public. *See, id.*

The sixth criterion is evidence of actual confusion between the products, which may be shown through anecdotal or statistical means. Factual demonstration of confusion is not necessarily required. *Id.* at 31, *citing, Boston Professional Hockey Ass'n Inc. v. Dallas Cap Emblem Mfg., Inc.,* 510 F.2d 1004, 1012 (5th Cir.1975). The seventh is defendants' intent in adopting the marks of plaintiffs, which must appear directed toward confusing the public to qualify as infringing conduct. *Boston Athletic Ass'n,* 867 F.2d at 32. The eighth is the strength of plaintiffs' mark, indicated by the length of time the mark has been used, the plaintiffs' and the mark's renown in their fields, and the plaintiffs' promotions of its mark. *Id.; Pignons,* 657 F.2d at 491; *Astra Pharmaceutical Products, Inc. v. Beckman Instruments,* 718 F.2d 1201, 1209 (1st Cir.1983). None of these eight factors is dispositive. *Id.* In cases of intentional copying, the defendants are "presumed to have intended a confusing similarity of appearance and to have succeeded in doing so." *Boston Athletic Ass'n,* 867 F.2d at 34. This presumed intentionality creates a rebuttable presumption against the defendants where copying has occurred. *Id.*

## III.

### *Analysis*

■ There are several aspects of Same that NutraSweet directly challenges. The four most notable elements are: 1) Same's name; 2) the color and design of the packets; 3) the use of the term "nutriendulzador", which means "nutrisweetener", an alleged copy of the trademark "NutraSweet"; and 4) the advertised assertion that Same is identical to Equal. We examine both parties' arguments, perlustrating this question through the structure of the eight criteria of trademark infringement analysis, in order to determine if defendant has met its burden under the summary judgment standard.

### A. *Similarity of the Marks*

Instructive in our consideration of this criterion is *Kenner Parker Toys, Inc. v. Rose*

*Art Industries, Inc.,* 963 F.2d 350 (Fed.Cir. 1992), in which the Federal Circuit found that the makers of FunDough, a children's modeling clay, infringed on the trademark of PlayDoh. In that case, the infringing product's name not only copied the meaning of the trademarked name, but the sound as well.

Nutribest argues, in a plainly specious move, that the word "same" has a distinct meaning from "equal". In our lexicon, they function as interchangeably as two adjectives can. Nutribest's use of "nutriendulzador" closely copies NutraSweet. The use of like-sounding or like-meaning words to describe a product of like quality may serve as the basis for a trademark infringement case. "Nutriendulzadorm" goes beyond meaning to sound and linguistic structure, with a prefix followed by an adjective to form a word not previously used. Nutribest claims that NutraSweet waived this argument, having used the term "nutriendulzador" in its recent advertising. As was noted in the *Boston Athletic Ass'n case,* 867 F.2d at 30, the best copy is one similar enough to deceive the public but different enough to confuse the courts. Whether these uses by both parties indicate that defendants' use is not a copy of plaintiffs' trademarked NutraSweet is a material question of fact.

We also note that the Federal Circuit vacated a dismissal of NutraSweet's opposition to the granting of a trademark to a product called Novasweet, citing to the *Kenner* case, which clearly enunciated the similarity of mark doctrine.

### B. *Similarity of the Goods*

The two products use aspartame as their principal component. The second ingredient in both products is dextrose. Maltodextrin, the third ingredient in Equal, is not used in Nutribest's formula, a fact that has been used by both parties in advertising, with NutraSweet claiming that Same lacks a key ingredient, while Nutribest attempts to convince people that it has fewer additives. Nutribest claims that in pointing to different ingredients in its publicity, NutraSweet waives the argument that the goods are simi-

lar. Madison Avenue spin may persuade consumers, but this court must survey not only publicity, but the whole of the product: Its composition, packaging, marketing, distribution, and other facets. In the literal consideration required by the "similarity-of-the-goods" standard, the two products appear to be functionally indistinguishable.

Two cases which define the law in this regard are *Pignons,* 657 F.2d at 487–88, and *Boston Athletic Ass'n,* 867 F.2d at 30. In the former, the products involved were a cheap camera using the word "alpha" descriptively copying a high-quality one using the name "alpa", *Pignons,* 657 F.2d at 487–88. The difference in goods in part defeated the plaintiffs' claim of trademark infringement in that case. The latter case involved Boston Marathon t-shirts that copied official Boston Marathon t-shirts, which did constitute a trademark infringement. *Boston Athletic Ass'n,* 867 F.2d. at 30. On this scale of similarity of goods, the instant case most closely matches the *Boston Athletic* case, since the goods are so similar. Apparently, to reformulate Gertrude Stein's famed line, Same is the same as Equal.

### C. Relationship Between the Parties' Channels of Trade

Both parties apparently distribute through supermarkets and similar outlets for tabletop sweeteners, but the full determination of this unargued point leaves another material fact open for resolution. *See, e.g., id.*

### D. Advertising

The parties have provided the court with samples of comparative advertising. Some comparative advertising may indicate infringement, but does not where "it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *SSP Agricultural, Etc. v. Orchard–Rite Ltd.,* 592 F.2d 1096, 1103 (9th Cir.1979), *quoting Smith v. Chanel, Inc.,* 402 F.2d 562, 563 (9th Cir. 1968). In the instant case, the advertising of Same may be objectionable, but its comparative advertising apparently has little potential to heighten confusion with Equal. Al-

though the parties advertise in the identical fora, Nutribest's comparative advertising, referring to Equal as a different product, might actually lessen confusion between the products. Such factual determination remains open for determination.

### E. Clauses of Prospective Purchasers

Both products presumably share coterminous markets given that they are both fairly inexpensive and of comparable quality. Nutribest might claim that its cheaper price engenders a lower-income target market than NutraSweet's. However, the price differential is unlikely to fix two distinct classes of potential purchasers. *See Boston Athletic Ass'n,* 867 F.2d. at 31.

### F. Evidence of Confusion Between Products

The lack of direct evidence of confusion may indicate there is an actual lack of confusion, but it also might be attributable to a lack of discovery. In any case, the law only requires a finding of a likelihood of confusion, an analysis of which we are quite capable. *Id. citing Boston Prof. Hockey Ass'n, Inc.,* 510 F.2d at 1012.

Although comparative advertising may lessen confusion, the similarity of the marks, the products, and the packaging might raise some confusion on the part of the purchasing public. Same, made with a "nutriendulzador", in a little powder blue packet, might be mistaken for Equal, with NutraSweet, packaged similarly. Diners likely reach for these packets based on aspartame product identification established by Equal. In *Qualitex v. Jacobson Products Co., Inc.,* 514 U.S. 159, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995), the Supreme Court held that color may meet ordinary trademark requirements. Although we make no such determination here, we note the deceptive potential of the color usage: "[O]ver time, customers may come to treat a particular color on a product or its packaging ... as signifying a brand." *Id.* at 163, 115 S.Ct. at 1303. Although these issues appear to favor plaintiffs' case, defendants proffer the lack of direct confusion to be significant, a factual finding of which would aid in the resolution of this case.

## G. *Adoption of the Mark Directed Toward Confusing the Public*

The adoption of the name Nutribest for a company that will produce a competing product to that of a company called NutraSweet, a product called Same to compete with one called Equal, containing a "nutriendulzador" to fill the role of NutraSweet, suggests a potential intent to confuse the public. The elements of Same's publicity and image that approximate those of Equal could be interpreted as signs of their intent to deceive the public. See *Boston Athletic Ass'n*, 867 F.2d, at 32. Again, Nutribest's publicity, in comparing itself to Equal, points to a distinction between them, but this publicity does not in itself eradicate the impressions left by so many, similarities between the products. Again, the balancing of the parties' acts requires factual determination.

## H. *The Strength of the Plaintiffs' Mark*

Equal, on the market ten years before Same was introduced, has a very strong trademark, so known that the basic product sold under its trademark, aspartame, is often referred to as Equal. Its exclusive use of NutraSweet, the most popular diet sweetener on the market (mostly for diet soda), also gives it strong brand recognition. This strength is something that a competitor might want to tap into, as occurred in the *Kenner Parker Toys case*, 963 F.2d at 351–52, in which Play-doh so defined the market in children's modeling clay that the brand name defined the genre itself. As in that case, Equal's advertising expenditures plainly evidence the strength of its notoriety.

Equal's strong mark has not lately translated into higher sales since Same's market share in Puerto Rico approaches the level of Equal. Nonetheless, as people refer to saccharin as "Sweet 'N Low", Equal's mark has defined the aspartame market in an undeniably enviable fashion. This strength may have attracted a competitor to mimic the trademarked product to get a foothold in the market. However, such a sweet business strategy may turn perilously saccharine where "[a] strong mark ... casts a long shadow which competitors must avoid." *Id.* at 353.

## IV.

### *Conclusion*

Reviewing the eight criteria for trademark infringement in the context of the summary judgment standard, the two parties present vastly differing factual representations on the issues of advertising, evidence of confusion, and the adoption of the mark to confuse consumers. These and other material factual disputes in this case require further consideration that cannot be achieved in the context of a summary judgment motion. In conclusion, we **DENY** Nutribest Corporation's motion for summary judgment. We grant the parties forty-five (45) days for streamlined discovery by deposition, the stipulated plan of which must be submitted to the court **within ten (10) days**. We consolidate the trial with the preliminary injunction hearing, which will be held on **December 1, 1997, at 9:30 A.M.**, and, therefore, the motion for preliminary injunction is **DENIED without prejudice.**

This Opinion and Order also disposes of *Docket Documents Nos. 5, 9, 12, 20, 21, 23, 24, 26, and 27.*

**IT IS SO ORDERED.**